434 P.2d 388

**Ann E. WARD, by her mother and next friend, Hollye Ward, and Hollye Ward, Individually, Plaintiffs-Appellants,**

v.

**Edwin J. RAY, Defendant-Appellee.**

**No. 8300.**

Supreme Court of New Mexico.

Dec. 4, 1967.

Lorenzo A. Chavez, Melvin L. Robins, Albuquerque, for appellants.

Eugene E. Klecan, Albuquerque, for appellee.

### OPINION

CHAVEZ, Chief Justice.

This is an action against defendant-appellee Edwin J. Ray for recovery of damages for personal injuries sustained in an automobile-pedestrian collision. Plaintiff-appellant Ann E. Ward, the pedestrian involved, sued by her mother and next friend plaintiff-appellant Hollye Ward, who also sued individually for medical expenses incurred.

The complaint alleged that on June 27, 1962, appellant Ann Ward was crossing Highway 66 at its intersection with Fourth Street in Santa Rosa, New Mexico; that she was walking in a crosswalk and was struck by an automoble being driven by appellee in an easterly direction on Highway 66; and that as a result she suffered personal injuries. Appellee's answer admitted that Ann Ward was crossing Highway 66 at its intersection with Fourth Street in Santa Rosa; denied the remaining allegations of the complaint; and affirmatively alleged that the negligence of appellants, or either of them, barred a recovery. The case was tried to a jury and judgment was entered on the jury's verdict for defendant-appellee. Notice of appeal was timely filed.

The evidence presented at the trial is as follows. At about 7:00 p. m. on June 27, 1962, Ann Ward was crossing Highway 66 in Santa Rosa, within the boundaries of a marked crosswalk, from the northwest corner of the intersection of Highway 66 and Fourth Street to the southwest corner of the intersection. When she was at least halfway across Highway 66, she was struck by an automobile being driven by appellee in an easterly direction on Highway 66. The police officer who investigated the accident testified that the point of impact between the automobile and Ann Ward was within the boundaries of the crosswalk. Appellee testified that he never saw Ann Ward before the impact; that his first knowledge of her presence was when he observed her on the hood of his car after striking her; and that he had his car lights on. Ann Ward was uncertain as to whether or not she had seen appellee's automobile approaching just before the impact. She testified she seemed to have a vague memory that she saw headlights to her right. On direct examination she testified she did look to her right over her shoulder after she crossed the center of the highway; while on cross-examination she testified she did not know whether she had passed the middle of the street when she looked back over her right shoulder. Ann Ward also testified that, just before she

**568**

started to cross the street, she looked for approaching traffic but saw none, and that she waited at the corner for traffic for three to five minutes before starting to cross. Ann Ward's mother, who viewed the scene from the northwest corner of the intersection, testified there was traffic approaching in a westerly direction; that this traffic passed behind Ann as she crossed the street after Ann had proceeded at least as far as the middle of the street.

Appellee testified that, after the accident, Ann Ward's mother came up to Ann and said: "Sister, I told you not to run out into the street." Ann Ward's mother denied having made this statement. Ann Ward testified she walked across the street at a normal pace. Although it had been raining shortly before the accident, there was conflicting testimony as to the weather conditions at the time of the accident. Ann Ward testified that "It was faintly misting. It wasn't a heavy rain or anything, just sort of a mist in the area." Ann's mother testified that " * * * it was the same dampness that you have after a shower, a hard shower." She added " * * * it wasn't raining at all." Appellee testified that it " * * * was still raining at the time, and enough for me to still have my windshield wipers on." There was also varying testimony as to whether or not there was water running down the street or next to the curb; whether the streets were wet; and whether there was water running down the entire intersection of the street. Appellee testified he could not tell whether there was a marked crosswalk, but that he was quite familiar with Santa Rosa and he would have known, in the back of his mind, that marked crosswalks were there.

At the intersection in question, there was an overhead flashing signal light. The flashing light was yellow facing east and west on Highway 66. Appellee testified he noticed the flashing yellow light for a block before the accident. The testimony was conflicting as to whether the flashing light facing north and south on Fourth

Street was red or yellow. The police officer testified the light facing north and south was a flashing yellow light, but he was uncertain as to this. Appellant Ann Ward, the appellee and another witness all testified that the light on Fourth Street was flashing red.

Appellants submit two points for reversal. We will consider the second point first since it is dispositive of this case. Appellants argue that the trial court committed prejudicial error by giving instruction No. 20, as follows:

"You are instructed that under the law of New Mexico, the presence of a crosswalk does not in itself give a pedestrian the right-of-way when there are traffic signals in operation at the intersection, as in this case."

Appellants argue that the effect of this instruction was to deprive Ann Ward of the preferential status which was due her under § 64–18–33, N.M.S.A., 1953 Comp., the pertinent part of which provides:

"(a) When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.

"(b) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

Ann Ward would gain the preferential position accorded by § 64–18–33, supra, initially, only if the flashing lights at the intersection were not "traffic-control signals" under the applicable New Mexico statutes. Under our statutes, there is a distinction between "official traffic-control devices" and "traffic-control signals." In § 64-14–

21(a), N.M.S.A., 1953 Comp., "official traffic-control devices" are defined as:

"All signs, signals, markings, and devices not inconsistent with this act placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic."

In § 64–14–21(b), N.M.S.A., 1953 Comp., a "traffic-control signal" is defined as:

"Any device, whether manually, electrically, or mechanically operated, by which traffic is alternately directed to stop and to proceed."

The category of "official traffic-control devices" is broader than that of "traffic-control signals." Section 64–16–5, N.M.S.A., 1953 Comp., sets out some of the kinds of devices which are obviously encompassed within the language of § 64–14–21(b), supra; e. g., the ordinary traffic light which exhibits different colored lights successively. These devices are of the kind by which traffic is "alternately directed to stop and to proceed."

■ In the instant case, the signal light was flashing yellow facing appellee, and flashing either yellow or red facing Ann Ward. Both flashing yellow and flashing red signal lights may be "official traffic-control devices" within the meaning of § 64–14–21(a), supra, because they are clearly "* * * signals, * * * placed * * * for the purpose of regulating, warning, or guiding traffic." However, neither flashing yellow nor flashing red signal lights are "traffic-control signals" within the meaning of § 64–14–21(b), supra, because by neither of them is traffic "alternately directed to stop and to proceed."

In § 64–16–7(a), N.M.S.A., 1953 Comp., the law with regard to flashing signal lights is set out as follows:

"(a) Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal it shall require obedience by vehicular traffic as follows:

"1. Flashing red (stop signal). When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign;

"2. Flashing yellow (caution signal). When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution."

Thus, a flashing red signal light directs drivers of vehicles to stop, but it does not then alternately direct them to proceed as does the ordinary traffic light described in § 64–16–5, supra, which exhibits different colored lights successively, each color in turn directing drivers to stop, to go, etc. Similarly, a flashing yellow signal light directs drivers of vehicles to proceed with caution, but it does not alternately direct them to stop.

■ In the case before us, since there was no traffic signal in place or in operation of the "traffic-control signal" type, which would deprive Ann Ward of the right-of-way as a pedestrian under § 64–18–33, supra, it was prejudicial error to give instruction No. 20, supra, stating that "* * * the presence of a crosswalk does not in itself give a pedestrian the right-of-way when there are traffic signals in operation at the intersection, as in this case." Under this instruction, the jury might reasonably have believed that, because of the presence of a flashing yellow light facing appellee and the presence of either a flashing yellow or red signal facing Ann Ward, she could not benefit from the presence of a crosswalk. Evidence was presented which, if believed by the jury, could have, under § 64–18–33(b), supra, deprived Ann Ward of the preferential position accorded to pedestrians in crosswalks by § 64–18–33 (a), supra. Alternatively, the jury might have believed other evidence and found that Ann Ward did not act in such a way

as to be deprived of the preferential position accorded to pedestrians in crosswalks by § 64–18–33(a), supra. A party is entitled to an instruction on his theory of the case upon which there is evidence. Burnham v. Yellow Checker Cab, Inc., 74 N.M. 125, 391 P.2d 413; Gallegos v. McKee, 69 N.M. 443, 367 P.2d 934; Martin v. Gomez, 69 N.M. 1, 363 P.2d 365; Clay v. Texas-Arizona Motor Freight, 49 N.M. 157, 159 P.2d 317. Since the jury could have found that Ann Ward did not suddenly leave a curb or other place of safety and walk or run into the path of appellee's automobile, when the automobile was so close that appellee could not yield, the giving of instruction No. 20 was prejudicial error and deprived Ann Ward of the right-of-way she would have had under a proper instruction.

Appellee argues that, in view of certain other instructions which were given, the giving of instruction No. 20 was not prejudicial error. We cannot agree. Appellee points to instructions Nos. 5 and 6. Instruction No. 5 considers motorists' duties at intersections, but does not cover the instant situation of motorists' duties toward pedestrians in crosswalks. Instruction No. 6 charges motorists with seeing what they should have seen, but it does not erase the prejudicial effect that instruction No. 20 had in allowing the jury to believe a pedestrian's right-of-way in a crosswalk is in some way governed by the presence of a flashing signal light. Section 64–16–7(a), supra, makes it clear that flashing signal lights govern vehicular traffic, not pedestrian traffic.

Both parties in this case find something in McCandless v. Inland Northwest Film Service, Inc., 64 Wash.2d 523, 392 P.2d 613, which they contend supports their respective positions. We have considered McCandless and do not find it persuasive, as it appears the court was unable to discern any significance in the terms used in the statute, i. e., "traffic-control signals" and "traffic-control devices." The legislature made a distinction in the terms by defining each term. However, regardless of

the manner in which the court in McCandless disposed of the language used in the Washington statute, upon the facts present in that case, the court simply held that any contributory negligence of the woman delegated by plaintiff to care for the child would be imputable to the plaintiff, and that questions of negligence and contributory negligence and proximate cause were for the jury. The court reversed the directed verdict and judgment for the defendant and granted a new trial.

It follows that the cause must be reversed and remanded with direction to set aside the judgment heretofore entered and grant appellants a new trial, all in conformity with this opinion.

It is so ordered.

NOBLE, J., and SPIESS, C. J., Ct.App., concur.