640 P.2d 475

**Dan A. ADAMS, Plaintiff-Appellee,**

**v.**

**UNITED STEELWORKERS OF AMERICA, AFL–CIO and Local No. 178–A United Steelworkers of America, Defendants-Appellants.**

**No. 13210.**

Supreme Court of New Mexico.

Feb. 9, 1982.

Kool, Kool, Bloomfield & Hollis, John L. Hollis, Albuquerque, Rudolph L. Milasich, Jr., Pittsburgh, Pa., Bernard Kleiman, Chicago, Ill., for appellants.

McCormick & Forbes, John M. Caraway, Carlsbad, for appellee.

## OPINION

EASLEY, Chief Justice

Adams sued National Potash Company (Company), United Steelworkers of America, AFL–CIO and its Local 178–A (Union). The Company was dismissed from the case on stipulation by Adams. The jury returned a verdict for $7,500 in favor of Adams against the Union which was appealed. We reverse.

We discuss:

1. Whether there was neither evidence nor inference from which a jury could have found that Adams was wrongfully discharged, thus warranting a judgment for the Union notwithstanding the verdict.

2. Whether Adams' stipulated dismissal of the Company precluded his claims against the Union based on theories of *res judicata* or collateral estoppel.

3. Whether the jury was properly instructed on damages, the elements of unfair representation and deposition testimony.

4. Whether the trial judge abused his discretion by not submitting special interrogatories to the jury.

5. Whether certain evidence on Adams' work record should have been admitted.

Adams, while working for the Company, had a confrontation with his foreman. There is some dispute whether Adams violated the Company's Work Rule No. 16 by refusing to follow a reasonable order given by the foreman. The Company discharged Adams for insubordination.

With the assistance of the Union, Adams filed a grievance for wrongful discharge, and claimed he had not been given a direct order and that if an order had been given, it was not reasonable. The grievance was properly processed through the first three steps of a contractual grievance procedure. Step four called for the Union to respond to the Company's written position within fifteen days. Final authority to decide whether a grievance would be arbitrated was vested in the Union's staff representative, Hollan Cornett. However, the new Local President took no note of the impending deadline. He mistakenly believed that a membership vote was necessary before a grievance could be appealed to arbitration and delayed voting until the next regular

meeting which was held past the fifteen-day deadline. The members then voted to send the grievance to arbitration.

Staff Representative Cornett, an experienced paid Union employee, testified that he also did not notice the time limit had passed, and that he had already determined that the grievance did not merit arbitration. Since the response of the Union was untimely filed, the Company refused to arbitrate.

Adams filed a complaint against both the Company and the Union. He sued the Company under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976), alleging that the Company breached the collective bargaining agreement because it discharged him without just cause. Adams later stipulated to a dismissal with prejudice of the claims against the Company. The Union was sued under Sections 7 and 9 of the National Labor Relations Act, 29 U.S.C. §§ 157, 159 (1976), for breach of their federal duty of fair representation based on the missed time limit which precluded arbitration on the merits of Adams' grievance.

A state district court has jurisdiction to decide this federal question based on federal statutory and case law. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). We must apply federal substantive law but state procedural law.

### 1. Evidence of Wrongful Discharge.

The Union claims there is no evidence or inference of wrongful discharge to support the jury's verdict and that the court erred in refusing to grant judgment NOV.

Adams was properly discharged under the collective bargaining agreement if he was guilty of insubordination, which is a deliberate and willful refusal by an employee to comply with a proper request or demand. There was conflicting evidence at trial concerning whether the foreman gave Adams a direct order which Adams deliberately disobeyed. Both sides called witnesses and cross-examined them; thus, the jury had ample opportunity to hear and evaluate the evidence. From this evidence the jury necessarily determined the credibility of the witnesses, reconciled inconsistent testimony and decided the truth. *Worthey v. Sedillo Title Guaranty, Inc.*, 85 N.M. 339, 512 P.2d 667 (1973).

In considering a motion to grant judgment notwithstanding the verdict, this Court has always considered the testimony in a light most favorable to the prevailing party. *Montoya v. General Motors Corporation*, 88 N.M. 583, 544 P.2d 723 (Ct.App. 1975), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1976). This evidence, together with the inferences that may be drawn therefrom, is accepted as true, and all evidence to the contrary is disregarded. *Scott v. McWood Corporation*, 82 N.M. 776, 487 P.2d 478 (1971); *Miera v. George*, 55 N.M. 535, 237 P.2d 102 (1951). All the evidence must be reviewed, but, if there be conflicts or contradictions in the evidence, those conflicts must be resolved in favor of Adams, who is the non-moving party. *Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977). We should be able to say that there is neither evidence nor inference from which the jury could have arrived at its verdict. *Townsend v. United States Rubber Company*, 74 N.M. 206, 392 P.2d 404 (1964).

After thoroughly searching this record and considering the testimony in the light most favorable to Adams, we find there was substantial evidence that he was wrongfully discharged. If we accept Adams' testimony as true, there is both evidence and inferences from which the jury could have arrived at its verdict. Inconsistencies between his evidence and the evidence presented by the Union were resolved by the jury. Since the jury obviously believed Adams, they acted reasonably in finding he was wrongfully discharged. We affirm the trial court as to this issue.

### 2. Whether Dismissal of Company Bars Adams' Claim.

Adams agreed to a dismissal with prejudice of all his claims against the Company. The trial judge instructed the jury that they must find both that Adams was

wrongfully discharged and that the Union breached its duty to fairly represent him. The Union asserts that the dismissal bars any action against it because of the doctrines of *res judicata* and collateral estoppel.

■ To apply the doctrine of *res judicata*, the second suit must be identical with the first suit in four respects: There must be identity of (1) subject matter, (2) cause of action, (3) persons and parties and (4) capacity or character of the persons for or against whom the claim is made. *Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d 1277 (1978); *City of Santa Fe v. Velarde*, 90 N.M. 444, 564 P.2d 1326 (1977); *Adams v. Cox*, 55 N.M. 444, 234 P.2d 1043 (1951).

■ Adams sued the Union, charging it with a breach of its duty of fair representation. This duty does not stem from a collective bargaining agreement but arises out of Sections 8(b) and 9(a) of the Labor Management Relations Act, 29 U.S.C. §§ 158(b), 159(a) (1976). *Smith v. Local No. 25, Sheet Metal Workers Int. Ass'n*, 500 F.2d 741 (5th Cir. 1974). Even if both the wrongful discharge suit and the breach of duty suit were construed as involving essentially the same course of wrongful conduct, this does not indicate that both suits arise from a single cause of action. *City of Santa Fe v. Velarde, supra.*

Adams alleged separate causes of action against the Union and the Company. Although the Company precipitated both causes of action when it discharged Adams, the Company and the Union did not engage in one united course of wrongful behavior, nor are the issues identical between Adams and the two defendants. Thus, Adams is not precluded by application of *res judicata* from pursuing his claim against the Union.

■ Collateral estoppel, or "issue preclusion", is an entirely distinct concept, which does not require that both suits be based on the same cause of action. *Torres v. Village of Capitan, supra; City of Santa Fe v. Velarde, supra.* The purpose of collateral estoppel is to aid in the finality of judgments by preventing parties from endlessly relitigating the same issues under the guise of different causes of action. Collateral estoppel bars relitigation, as between parties or their privies, of ultimate facts or issues actually and necessarily decided in a prior suit. *See Torres v. Village of Capitan, supra.*

■ As between Adams and the Company, it was actually and necessarily determined that Adams was not wrongfully discharged. Whether this bars relitigation of the issue of wrongful discharge between Adams and the Union depends on whether the Union was a party or privy in the dismissed cause of action. Dismissal with prejudice constitutes a complete adjudication of the merits. *See Chalmers v. Hughes*, 83 N.M. 314, 491 P.2d 531 (1971).

The fact that the Union was originally joined in the complaint with the Company as a party-defendant is not sufficient to make the Union privy to the Company. *See Phillips v. United Serv. Auto. Ass'n*, 91 N.M. 325, 573 P.2d 680 (Ct.App.1977). Persons interested in the same question or in proving the same facts are not privies. 1 A. C. Freeman, A Treatise of the Law of Judgments § 438 (1925). Nor does a final judgment entered against an individual defendant bar Adams from further action against another defendant. *Montano v. Williams*, 89 N.M. 86, 547 P.2d 569 (Ct.App.), *aff'd*, 89 N.M. 252, 550 P.2d 264 (1976).

■ The doctrine of collateral estoppel is not intended to tie the hands of judges. *Torres v. Village of Capitan, supra.* When all the elements of collateral estoppel are met, the doctrine may not be applied by a judge when the purposes for which it would be used would be fundamentally unfair and would not further the aims of the doctrine. *See Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978); *The Evergreens v. Nunan*, 141 F.2d 927 (2d Cir.), *cert. denied*, 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944); *Eisel v. Columbia Packing Company*, 181 F.Supp. 298 (D.Mass.1960).

■ Balanced against the purposes of collateral estoppel is the need to determine that the party against whom an estoppel is

asserted had a full and fair opportunity to litigate. *See Winters v. Lavine, supra; Eisel v. Columbia Packing Company, supra.* Where the record does not indicate a reason for a dismissal with prejudice, as is true here, and the judge determined the trial should proceed, one logical inference is that the judge realized Adams had not had an opportunity to fully and fairly litigate the wrongful discharge issue. The trial judge did not abuse his discretion when he allowed the issue of wrongful discharge to be tried between Adams and the Union.

### 3. *Instructions.*

 The Union claims that the trial judge improperly instructed the jury on its duty to Adams. The jury instruction as given reads:

> The duty of fair representation is a union's duty to represent all of its members honestly, in good faith, and without hostility or arbitrary discrimination. A breach of that duty may be found only where the union's conduct toward a member working under the union's contract or collective bargaining agreement is arbitrary, discriminatory, or in bad faith.

This language is drawn from the United States Supreme Court's decision in *Vaca v. Sipes, supra.* However, the Court in *Vaca* also stated that "the individual employee has no absolute right to have his grievance arbitrated ... and that a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious...." *Id.* 386 U.S. at 195, 87 S.Ct. at 919.

The federal standard also distinguishes between "honest, mistaken conduct, on the one hand, and deliberate and severely hostile and irrational treatment". *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971).

This distinction is followed "in order to limit the situations in which an employee may judicially contest the results of grievance and arbitration proceedings that are the subject of collective bargaining and properly within the jurisdiction of the Na-

tional Labor Relations Board rather than the jurisdiction of the courts." *Hoffman v. Lonza, Inc.,* 658 F.2d 519, 522 (7th Cir. 1981). Honest, mistaken conduct is therefore pre-empted from consideration by the courts.

The Union tendered several jury instructions defining the federal standard which were refused by the trial judge. Two of the rejected instructions read in part: "An employee does not have an absolute right to have his grievance taken through the grievance procedure to arbitration * * * [and, a] union does not breach its duty of fair representation by negligently, carelessly or inadvertently failing to timely request arbitration. * * *" These instructions were properly preserved and presented by defendants. N.M.R.Civ.P. 51(G), (I), (J), N.M.S.A.1978 (Supp.1981).

 The Union has the burden of showing that the trial court's refusal to give its requested instructions created prejudice to it and thus constituted reversible error. *Jewell v. Seidenberg,* 82 N.M. 120, 477 P.2d 296 (1970). In determining whether it is reversible error, we will accept the slightest evidence of prejudice, and all doubt will be resolved in favor of the Union. *Id.*

 The trial judge has the duty to instruct the jury on the law applicable to the facts. N.M.R.Civ.P. 51(B), N.M.S.A. 1978 (Supp.1981). The Union is entitled to instructions on its theory of the case when there is evidence to support it in the record. *Ward v. Ray,* 78 N.M. 566, 434 P.2d 388 (1967). Failure to submit these instructions to the jury constitutes reversible error. *Stephens v. Dulaney,* 78 N.M. 53, 428 P.2d 27 (1967).

The trial court did not instruct the jury that the individual employee has no absolute right to have his meritorious grievance arbitrated. Nor did the court instruct that honest, mistaken Union conduct is not arbitrary. The question is whether the court prejudiced the Union when it failed to give these instructions which embody specific mandates from the United States Supreme Court.

Under the instruction given, absent further explanation, the jury could have decided that, although the Union made an honest mistake in failing to file the grievance on time, the failure nevertheless was "arbitrary, discriminatory, or in bad faith." Without a clear statement that honest but mistaken conduct may not be considered arbitrary, the jury might well have overlooked the Union's most valuable theory. The Union relied heavily on this principle to support its defense and therefore was entitled to an instruction which apprised the jury of its theory of the case. *See Ward v. Ray, supra.* Argument of the principle by the Union's lawyer did not suffice to cure the defect. We reverse the trial court on this issue.

The Union further claims reversible error in that the trial judge did not properly instruct the jury on the question of damages. Adams may recover against the Company only for those damages attributable to it. *Vaca v. Sipes, supra.* Adams can recover against the Union if its actions contributed to the wrongful discharge of Adams or exacerbated his loss or diminution of wages *beyond that for which the employer would be charged. Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888 (4th Cir. 1980).

The trial judge instructed the jury on Adams' loss of earning potential, damage to his reputation and employability. These damages arise mainly from his discharge for cause from the Company. After reviewing the instruction as a whole and in light of all the others, we conclude that it does not fairly or adequately present the law. *See Eidson v. Atchison, Topeka and Santa Fe Railway Co.,* 80 N.M. 183, 453 P.2d 204 (1969). Since the jury was not given the correct legal standard, we need not decide whether the jury misapplied the law. We find that the trial judge committed reversible error which prejudiced the substantial rights of the Union.

The Union asserts reversible error on the trial judge's failure to instruct the jury on the weight to be afforded deposition testimony. The Union requested what was then N.M.U.J.I. Civ. 15.3, N.M.S.A.1978, now codified as N.M.U.J.I. Civ. 2.3, N.M.S.A. 1978 (Repl.Pamp.1980), to be submitted to the jury. The gist of that instruction is to inform the jury to treat deposition testimony the same as testimony at trial. The Comment note to U.J.I. 15.3 indicates that this instruction is to be used when the deposition is introduced for evidence.

In this case, the deposition was not introduced into evidence. The deposition was used to impeach Adams' testimony. The jury was instructed on impeachment, and therefore we do not find that the trial judge's failure to give U.J.I. 15.3 was reversible error. We note for future cases that under our present jury instructions trial judges are strongly encouraged to give an instruction on deposition testimony when it is offered. N.M.U.J.I. Civ. 2.0, N.M.S.A. 1978 (Repl.Pamp.1980). In this way, the deposition testimony is more meaningful to the jury.

### 4. Submission of Special Interrogatories.

The Union contends that the trial judge's refusal to submit interrogatories to the jury is reversible error. A trial judge has the discretion on whether to submit interrogatories to the jury, and we will not disturb his decision unless that discretion was abused. *State ex rel. State Highway Commission v. Chavez,* 80 N.M. 394, 456 P.2d 868 (1969); *Landers v. Atchison, Topeka & Santa Fe Railway Co.,* 73 N.M. 131, 386 P.2d 46 (1963). After reviewing Union's requested jury instruction and the instructions given, we find that the trial judge acted reasonably and did not abuse his discretion.

### 5. Evidence Excluded.

The trial judge excluded from evidence two written disciplinary warning notices and testimony on Adams' work record. The Union asserts this is prejudicial because this evidence goes to the heart of wrongful discharge and unfair representation issues. Adams argues that the evidence has nothing to do with either issue.

376

We hold that work records are relevant to both issues because disciplinary matters are a major factor in determining whether Adams received proper punishment. F. Elkouri & E. Elkouri, How Arbitration Works 638 (3d ed. 1973); *see generally, e.g. Foremost-McKesson, Inc.*, 69–1 Lab. Arb. Awards (CCH) ¶ 8405 (Chalfie 1969). Failure to admit this relevant evidence is prejudicial.

This case is reversed and remanded for a new trial consistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, J., concur.