700 P.2d 642

**INTERNATIONAL PAPER COMPANY,
Plaintiff-Appellant and Cross-Appellee,**

v.

**Roy E. FARRAR, Defendant-Appellee
and Cross-Appellant.**

**No. 15245.**

Supreme Court of New Mexico.

May 8, 1985.

Rehearing Denied May 31, 1985.

Joseph A. Roberts, Santa Fe, for plaintiff-appellant and cross-appellee.

Dennis Luchetti, Espanola, for defendant-appellee and cross-appellant.

## OPINION

SOSA, Senior Justice.

This is an appeal from the district court of Rio Arriba County in a breach of contract action. The plaintiff, International Paper Co. (International) sold boxes to be used for packing tomatoes to Roy E. Farrar Produce Co. (Farrar). International sued to collect the amount of $14,040.34 due and owing from Farrar on the sale of the boxes. Farrar counterclaimed, alleging that the boxes were not fit for their intended purpose (shipping tomatoes) because they collapsed during shipping and storage, thereby damaging the fruit. Farrar claimed damages in the amount of $25,000.00, and for $3,900.00 worth of International boxes remaining in his inventory that are unfit for use.

This case considers the use of the doctrine of collateral estoppel and presents several questions under Article Two of the Uniform Commercial Code (UCC), NMSA 1978, Sections 55-2-101 to 55-2-725 (Cum. Supp.1984). Issues raised by the claim and counterclaim are:

(1) Whether the trial court correctly used the doctrine of collateral estoppel to prevent Farrar from claiming a portion of his damages;

(2) Whether Section 55-2-314 of the UCC, Implied Warranty of Merchantability, applies;

(3) Whether Section 55-2-315 of the UCC, Implied Warranty of Fitness for a Particular Purpose, applies;

(4) Whether boxes delivered by International conformed to a sample or model;

(5) Whether revocation of acceptance was made under the UCC Section 55-2-608;

(6) Whether a clerical error was made by the court in calculating damages.

We affirm on issues 2 through 5 under the UCC. We reverse and remand on the issues of collateral estoppel and damages.

The trial court found that Farrar ordered a shipment of boxes from International that were to be suitable for the packing and storage of tomatoes. The dimensions of the two sizes of boxes were to be such that either twenty or thirty pounds of tomatoes could be packed without the necessity of weighing each box. As to specifications, Farrar dealt with Wilson, an agent and salesman for International. Farrar requested the boxes be the same type as those supplied to Florida packers for the shipping of tomatoes. Farrar told Wilson to obtain the correct specifications for the Florida-type boxes. Farrar rejected a sam-

ple box produced because the dimensions and construction were not correct. There was an indication that the double waxing of the sample box was not necessary. Farrar ordered boxes with the same dimensions and construction as the Florida box. Wilson assured Farrar that International's computer could calculate a box with the correct dimensions. There was testimony that Wilson did not obtain the dimensions of the Florida box, but instead obtained specifications of a box International sold in Texas.

International shipped Farrar 21,500 unassembled boxes at a unit price of $.64 per box. The trial court found International had warranted and represented these boxes were suitable for the packing and shipping of tomatoes. Further, the court found that the boxes were unsuitable for their intended purpose; were not tomato boxes; were not the type of boxes used in Florida; and did not have adequate stacking strength and would not hold up during shipping. The defects were not apparent on delivery and were not discovered until most of the boxes were packed and shipped.

Farrar incurred the cost of repacking 3,624 boxes (at $1.92 per box), and the cost of replacing the damaged tomatoes. Substitute boxes had to be purchased to replace the non-functioning boxes at a cost of $.10 per box over market price. The replacement boxes were the Florida-type and did not collapse when used. Farrar advanced growers $6.00 per box on tomatoes that were damaged during shipping and could not be sold. Farrar suffered deficiencies from the sale of the tomatoes and was not able to recoup packing and brokerage fees. Lastly, there were 6,100 boxes in Farrar's inventory which he cannot use.

The trial court found that Farrar either rejected the boxes or revoked his acceptance upon discovery of the defective boxes, but International refused to take back the unused and unfit boxes. The court also found that in ordering the boxes from International, Farrar had relied upon the special knowledge and expertise of International as a respected manufacturer of box-

es used in the packing of produce. International had notice of the type of tomato to be packed, the high humidity at the packing shed location and Farrar's reliance on receiving a Florida-type box as ordered through Wilson.

**Collateral Estoppel**

Farrar attempted to introduce into evidence losses of $39,192.77. International objected to $18,315.00 of this amount under the doctrine of collateral estoppel. International claimed the $18,315.00 was the amount litigated in a suit Farrar brought against three growers in Arkansas for nonpayment of packing charges and brokerage fees and for the return of the $6.00 per box advance. The trial court refused evidence of the $18,315.00 loss, presumably on grounds of collateral estoppel.

This Court has recently applied the doctrine of collateral estoppel. *Adams v. United Steelworkers of America*, 97 N.M. 369, 373, 640 P.2d 475, 479 (1982). *Adams* provides that collateral estoppel bars relitigation of "ultimate facts or issues actually and necessarily decided in a prior suit." *Id. See also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (holding collateral estoppel is used only when an issue is actually and fully litigated.)

International claims the outcome of the Arkansas suit prevents Farrar from pursuing the claim for damages in this suit. International claims the Arkansas court did not find in favor of Farrar, thus Farrar is estopped from claiming damages already litigated under the doctrine of collateral estoppel.

■ Collateral estoppel, like res judicata, is a judicial economy measure to prevent litigation of an issue already judicially decided. *Adams. See Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 652 P.2d 240 (1982). New Mexico traditionally requires four elements to be present for collateral estoppel to be invoked: (1) the parties are the same or are privies of the original parties; (2) the cause of action is different; (3) the issue or fact was actually litigated;

and (4) the issue was necessarily determined. *See Torres v. Village of Capitan*, 92 N.M. 64, 582 P.2d 1277 (1978).

■ It is the burden of the movant invoking the doctrine of collateral estoppel to introduce sufficient evidence for the court to rule whether the doctrine is applicable. *See Buhler v. Marrujo*, 86 N.M. 399, 524 P.2d 1015 (Ct.App.1974), *overruled on other grounds*, 98 N.M. 690, 652 P.2d 240 (1982). If the record does not provide sufficient evidence of the elements of collateral estoppel, the court cannot invoke the doctrine. *Buhler.*

■ In the instant case we have no evidence to indicate what issues were actually or fully litigated in Arkansas. We have searched the record on appeal and cannot find evidence of the Arkansas suit other than statements made by the attorneys at oral argument. There is no transcript, record or judgment from the Arkansas suit in the record before this Court. We do not know whether the issues in the Arkansas suit are the same issues as those in the case at bar. Therefore, collateral estoppel cannot be applied. In light of this conclusion we need not reach Farrar's contention that the requirement of "same parties" is not met but note the Arkansas growers are not in privity with International. *Torres v. Village of Capitan. See also Edwards v. First Federal Savings & Loan Association of Clovis*, 696 P.2d 848 (N.M.Ct.App. 1985) (discussing the modern view of the defensive and offensive use of collateral estoppel).

## Uniform Commercial Code

### (a) Implied Warranties

■ Two implied warranties are available to Farrar under the UCC, the implied warranty of merchantability, NMSA 1978, Section 55–2–314, and the implied warranty of fitness for a particular purpose, NMSA 1978, Section 55–2–315. New Mexico recognizes that the implied warranties of merchantability and fitness for a particular purpose are implied by law and are independent of express warranties. *Perfetti v.*

*McGhan Medical*, 99 N.M. 645, 662 P.2d 646 (Ct.App.), *cert. denied*, 99 N.M. 644, 662 P.2d 645 (1983).

To fit within Section 55–2–314, the seller must be a "merchant with respect to goods of that kind" and the goods must be unmerchantable within the guidelines of subsections 55–2–314(2) and (3) which provide in pertinent part:

(2) Goods to be merchantable must be at least such as:

(a) pass without objection in the trade under the contract description; and

*     *     *     *     *     *

(c) are fit for the ordinary purposes for which such goods are used; and

*     *     *     *     *     *

(3) Unless excluded or modified (Section 2–316 [55–2–316 NMSA 1978]) other implied warranties may arise from course of dealing or usage of trade.

■ It was established at trial that International was a "merchant with respect to goods of that kind" in the selling of boxes for packing produce. It is not necessary for the buyer to prove his reliance on the skill or judgment of the seller under implied warranty of merchantability. *Daniell v. Ford Motor Co.*, 581 F.Supp. 728 (D.N.M.1984).

■ The court made specific findings that the boxes were not suitable for the packing, shipping or storage of tomatoes. Additionally, the boxes were not the Florida-type Farrar ordered. The record supports the trial court's determination that there was a breach of implied warranty. § 55–2–314(2), (3).

■ An implied warranty of fitness for a particular purpose requires reliance by the buyer on the seller's skill or judgment. § 55–2–315. The record reveals ample evidence upon which the trial court could base a finding that Farrar relied on the skill or judgment of International to provide boxes that would ship twenty and thirty pounds of tomatoes and would not collapse during shipping and storage. The trial court was correct in finding a breach

of implied warranty under Section 55–2–315.

In reviewing the question of sufficient evidence in the record to support the court's findings of fact, this Court follows the rules as delineated in *Toltec International, Inc. v. Village of Ruidoso*, 95 N.M. 82, 619 P.2d 186 (1980). After reviewing the evidence in light of the *Toltec* rules, we conclude there is substantial evidence to support a finding that under the agreement there was a breach of implied warranties by International. *See* NMSA 1978, §§ 55–2–314, 55–2–315.

**(b) Model or Sample**

■ Neither of the sample boxes that Wilson showed Farrar were the basis of the bargain under Section 55–2–313(1)(c). Therefore, Section 55–2–313(1)(c) cannot be used by International as a defense.

**(c) Revocation**

■ There is sufficient evidence that Farrar notified International as soon as he was aware that the boxes collapsed when shipped. The trial court found this was a latent defect that was not apparent nor discoverable by inspection when the boxes were received. NMSA 1978, § 55–2–513. Upon revocation of the goods after acceptance, Farrar may recover the price of the boxes and consequential damages. § 55–2–608, Official Comment (1).

**Conclusion**

As to the clerical error claim, both parties agree that no substantial evidence supports the actual amount of damages awarded by the trial court. As such, the proper level of damages must be calculated on remand.

For the reasons set forth above, the trial court is affirmed except as to the application of collateral estoppel and the award of damages. As to these issues, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

RIORDAN and WALTERS, JJ.