775 P.2d 237

**Lonnie K. MANLOVE,
Petitioner–Appellee,**

v.

**George W. SULLIVAN, Warden,
Respondent–Appellant.**

No. 17788.

Supreme Court of New Mexico.

May 16, 1989.

Rehearing Denied July 3, 1989.

Hal Stratton, Atty. Gen., Patricia A. Gandert, Asst. Atty. Gen., Santa Fe, for respondent-appellant.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for petitioner-appellee.

## OPINION

RANSOM, Justice.

A petition for writ of habeas corpus was filed with this Court in 1986 by Lonnie K. Manlove. We remanded to the district court to conduct hearings on allegations that the transcript of his original trial had been altered and that this denied Manlove an adequate record on appeal. The State appeals from the district court's order granting a new trial for Manlove. We reverse the district court and deny the petition for writ of habeas corpus.

In 1979, Manlove was tried and convicted of aggravated assault, kidnapping, and criminal sexual penetration. At his trial, the chief evidence against him was the testimony of the prosecutrix, along with circumstantial evidence that his car and a handgun in his possession were similar to those said to have been used in the commission of the crime. In his defense, petitioner presented alibi testimony by family and friends. On Friday afternoon, July 6, Tom Cherryhomes, Manlove's defense attorney, announced that a witness who had previously agreed to testify on behalf of his client had left town, and he was unable to serve her with a subpoena. He requested a continuance over the weekend to serve her.

The witness, Elizabeth Pike, had been mentioned in a preliminary hearing in February, at which time Manlove was represented by the public defender's office. Cherryhomes took over the defense a little more than a month before trial and apparently did not learn of the existence of Pike until late June, when the transcript of the preliminary hearing was transcribed by his office. After interviewing Pike on July 3, Cherryhomes discovered that her testimony was potentially crucial to his client's defense. Pike, a former roommate of the prosecutrix, was expected to testify that the prosecutrix had concocted stories of abduction and molestation several times in the past, that these stories resembled the facts alleged in the present case, that she had once been forced to recant such a story, and that, in Pike's opinion, the prosecutrix was the type of person who would not hesitate to see an innocent person convicted of a crime.

The trial judge, the Honorable Harvey Fort, criticized Cherryhomes for failing to subpoena Pike earlier. He noted that under the local rules of procedure, unless a witness was subpoenaed within ten days after notice of the trial date, the trial court at its discretion could refuse to grant a continuance to allow time to obtain the witness' presence. He also noted that although Cherryhomes knew on July 3 he intended to call Pike as a witness, he had mailed notice to the district attorney's office rather than placing a phone call. This, Judge Fort believed, had prejudiced the prosecution by depriving it of the opportunity to examine the witness prior to trial.

The trial court denied the request for a continuance, despite repeated attempts by Cherryhomes to persuade the court that Pike's testimony was crucial to his client's defense. Cherryhomes placed a criminal investigator from the district attorney's office on the stand to establish that the prosecution was aware of the existence of Pike and her relationship with the prosecutrix, and that Pike's testimony might cause problems for the State's case. Cherryhomes also presented testimony by Charles Wyman, an attorney with the public defender's office who knew Pike personally and had talked with her before she left town. Wyman testified that Pike left town out of fear the prosecutrix would harm her family or one of her animals if she testified for the defense.

In spite of Cherryhomes' continued requests for a continuance and the testimony of these witnesses, Judge Fort adhered to his denial of the motion. The jury was held over late Friday evening to complete presentation of testimony and reconvened on Saturday to deliberate. It found Manlove guilty as charged.

Manlove appealed, and the court of appeals affirmed the conviction in a 1980

memorandum opinion. His appellate attorney had not participated at the trial; and, before the court of appeals' decision was handed down, Manlove filed a *pro se* motion to amend the docketing statement, alleging the transcript of his trial failed to show that Judge Fort had denied the requested continuance because the judge was planning to go on vacation. This *pro se* motion was denied.

Subsequent to his unsuccessful appeal, Manlove has pursued a number of claims for postconviction relief. In 1982, he brought a habeas corpus action in Santa Fe District Court before Judge Scarborough, alleging with questionable logic that denial of the continuance for improper personal reasons unconstitutionally deprived him of effective assistance of counsel. During the course of the habeas corpus proceeding, Cherryhomes was called to the stand and presented uncontroverted testimony that Judge Fort gave as one of his reasons for denial of the requested continuance that he planned to go fishing. After hearing evidence and argument of counsel, Judge Scarborough filed detailed findings and conclusions. Included in his findings were that Judge Fort denied the requested continuance because he was going fishing, but that the testimony of Pike would have been inadmissible under the New Mexico rape shield law. *See* NMSA 1978, Section 30-9-16 (Repl.Pamp.1984). Judge Scarborough concluded Manlove had effective assistance of counsel in 1979.

*Posture of case on appeal.* In 1986, Manlove filed his present habeas corpus application directly with this Court, alleging the fishing trip comment found by Judge Scarborough in 1982 was not contained in the original trial transcript filed before the court of appeals in 1980, and that the alteration of the record denied him an adequate record for a full and fair appeal. He also renewed allegations of error in the denial of the continuance and ineffective assistance of counsel. We remanded his claim to the district court for a hearing on the allegation that the record had been altered and to determine whether he had been denied an adequate record for appeal. All other claims were dismissed. Judge Sandra Grisham was eventually designated to hear the case on remand. On September 24, 1987, she held a hearing attended by Manlove, his attorney, another inmate called as a witness for Manlove, and counsel for the State. On January 15, 1988, a second informal conference was held; however, a transcript of those proceedings is not in the appellate record for our review. On February 17, the State filed a motion for an additional evidentiary hearing, attaching affidavits by Judge Fort, his court reporter, and the court clerk of Roswell. This motion and the attached affidavits were not accepted for filing because they violated a local rule of procedure, and the motion for an additional hearing was denied by operation of law when thirty days passed without action by the court.

On May 27, 1988, Judge Grisham entered her findings and conclusions. Based on the evidence before her, Judge Grisham concluded the 1982 findings of Judge Scarborough were binding on the parties and found the statement reflecting that Judge Fort refused to grant the requested continuance because he was going fishing appeared nowhere in the record.[1] Judge Grisham concluded that Manlove had been denied an adequate record for appeal, reversed his conviction, and ordered a new trial. (We do not reach the question of whether the grant of a new trial was beyond the fact finding mandate of this Court.)

On appeal, the State argues that Judge Grisham abused her discretion in refusing

---

1. Judge Grisham further found that voir dire, opening statements and closing arguments were missing. However, we do not consider this finding to be of consequence in the matter before us. Neither his attorney nor Manlove, *pro se,* sought inclusion of these portions of the proceedings in the transcript for original appeal to the court of appeals. *See State v. Moore,* 87 N.M. 412, 534 P.2d 1124 (Ct.App.1975) (in determining whether new trial is to be granted for inability to produce a transcript, three factors are weighed: whether appellant has complied with all procedural requirements in order to perfect appeal, whether inability to obtain transcript is without fault on the part of appellant, and whether substitute or alternate record exists).

to hold an additional evidentiary hearing, and that her findings are internally inconsistent and unsupported by substantial evidence. Our analysis differs from that of the State; we conclude Judge Grisham's decision is based upon an erroneous application of the doctrine of issue preclusion, and we must decide the petition for writ of habeas corpus de novo on its merits.

■ *Issue preclusion from 1982 habeas corpus proceeding.* In its docketing statement, the State raises as an issue whether Judge Grisham abused her discretion in accepting Judge Scarborough's finding relating to the fishing trip comment, while at the same time refusing to accept Judge Scarborough's conclusion that the evidence of witness Pike was inadmissible. In the State's brief-in-chief this issue is reframed in terms of alleged inconsistency between Judge Grisham's conclusion that the 1982 habeas corpus findings are binding (and not subject to review or rehearing) and her conclusion that Manlove was denied an adequate record for appeal. If Pike's testimony was inadmissible, as Judge Scarborough concluded, then Manlove was not entitled to any relief from the denial of a continuance to secure her presence, and deletion of the fishing trip comment did not prejudice the merits of his subsequent appeal.[2]

■ At least against the state, we believe collateral estoppel principles may, at the discretion of a subsequent habeas corpus court, prevent relitigation of issues argued and decided on a previous habeas corpus petition if the resolution of such issues was necessary to the previous decision.[3] Yet, the findings and conclusions of

2. NMSA 1978, Section 30-9-16 (Repl.Pamp. 1984), provides that, in a prosecution for a sexual offense, evidence of the victim's past sexual behavior, opinion evidence thereof, or evidence of reputation is inadmissible unless the court finds that the evidence is material to the case and its probative value outweighs its prejudicial impact. Reviewing the record, we believe that a substantial portion of Pike's testimony did not constitute evidence of sexual conduct; rather, the testimony anticipated was that the prosecutrix in the past had made up stories of rape and abduction that resembled the facts alleged in this case, that she had once recanted such a story, and that, in Pike's opinion, she was the sort of person who would willingly see an innocent man put in jail. This evidence went to the prosecutrix's proclivity for truthfulness and was relevant both to impeach her credibility and as direct evidence in the petitioner's fabrication defense. *See* SCRA 1986, 11-404(A)(2); 11-608(A); *see also State v. Ross,* 88 N.M. 1, 3, 536 P.2d 265, 267 (Ct.App.1975) (defining collateral issue doctrine). Moreover, although we do not agree that the testimony was closely enough related to sexual conduct to be barred under Section 30-9-16, the discretion of the trial court to exclude such evidence must be weighed against a criminal defendant's constitutional right to confront witnesses. *See Olden v. Kentucky,* — U.S. —, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam) (abuse of discretion to prevent impeachment of prosecutrix on cross-examination, to show that she fabricated rape story to prevent boyfriend from discovering she willingly engaged in sexual intercourse with an acquaintance, on grounds that race of boyfriend might inflame jury passions). *See also, State v. Anderson,* 211 Mont. 272, 283-84, 686 P.2d 193, 199-200 (1984) (admission of evidence of prior false accusations in sex crime case does not contravene social policy of protecting victims and is necessary to afford accused full worth of constitutional right to confront witnesses); *Hughes v. Raines,* 641 F.2d 790, 792 (9th Cir. 1981) (habeas corpus action); *People v. Simbolo,* 188 Colo. 49, 532 P.2d 962 (1975); *People v. Hurlburt,* 166 Cal.App.2d 334, 333 P.2d 82 (1959).

3. There is no compelling reason to limit application of issue preclusion principles against the state. *See In re Hochberg,* 2 Cal.3d 870, 471 P.2d 1, 87 Cal.Rptr. 681 (1970) (when state deliberately bypassed opportunity to present evidence at hearing on habeas corpus petition, state not entitled to second evidentiary hearing and could not argue that if court had found facts its findings would have favored state). Habeas corpus proceedings themselves are afforded full res judicata and collateral estoppel effect in subsequent non-habeas corpus proceedings. *Williams v. Ward,* 556 F.2d 1143 (2d Cir.1977) (judgment in habeas corpus can effect issue preclusion in state prisoner's civil rights action for deprivation of rights in federal court if issue was litigated and decision was on merits); *cf. State v. Nance,* 77 N.M. 39, 419 P.2d 242 (1966) (state not estopped from relitigating issue of voluntariness of confessions by defendants notwithstanding finding of habeas corpus court that confessions were coerced when said findings were not necessary to the decision of the habeas corpus court). *See generally Silva v. State,* 106 N.M. 472, 745 P.2d 380 (1987); *Adams v. United Steelworkers of America, AFL-CIO,* 97 N.M. 369, 640 P.2d 475 (1982); *Edwards v. First Fed. Sav. & Loan Ass'n of Clovis,* 102 N.M. 396, 696 P.2d 484 (Ct.App.1985).

Habeas corpus jurisprudence, however, may well limit the application of principles of finali-

Judge Grisham give us no clue as to whether she exercised any discretion in stating that the fishing trip finding of the previous habeas corpus court was binding and not subject to review or rehearing. In any event, she made no findings as to the applicability of the doctrine of preclusion or the countervailing equities. *See Silva v. State,* 106 N.M. 472, 476, 745 P.2d 380, 384 (1987) (when movant for application of collateral estoppel has introduced sufficient facts for court to rule on applicability of doctrine, decision whether to apply doctrine in face of countervailing equities is left to discretion of trial court).

■ Judge Grisham has since recused herself from further proceedings, and the interest of this Court in the final resolution of this matter militates against still another remand for fact finding purposes. Judge Grisham apparently took no new evidence on whether the trial court stated the continuance was refused because he had plans to go fishing. We believe Judge Grisham could consider the previous habeas corpus testimony regarding the fishing trip statement; but we do not believe the finding of Judge Scarborough should have preclusive effect because it was only one of several possible bases for denying the ineffective assistance of counsel claim, and in that context the State well could have considered the allegation a non-issue or a logical basis for finding no ineffective assistance of counsel. (The fishing trip allegation was uncontested by the State.) While there is authority for the proposition that,

when any one of two or more findings of ultimate fact may have formed the basis for a prior determination, each may be given collateral estoppel effect in a subsequent lawsuit, *In re Westgate–California Corp.,* 642 F.2d 1174 (9th Cir.1981); *Winters v. Lavine,* 574 F.2d 46 (2d Cir.1978); *Irving National Bank v. Law,* 10 F.2d 721 (2d Cir.1926) (L. Hand, J.); *General Dynamics Corp. v. American Telephone & Telegraph Co.,* 650 F.Supp. 1274 (D.C.Ill. 1986), we believe the better rule is set forth in Restatement (Second) of Judgments § 27 comment i (1983);

> *Alternative determination by court of first instance.* If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.

*Presumption of prejudice, and standard of review.* Article VI, Section 2 of the New Mexico Constitution protects a criminal defendant's right to appeal; instrumental to this right is a record adequate to allow the defendant to demonstrate the existence of error in the original trial. *State v. Moore,* 87 N.M. 412, 534 P.2d 1124 (Ct.App.1975). Accordingly, if the fishing trip statement was so substantial and significant that its deletion foreclosed a potential avenue of appeal, a finding that the record had been so altered gives rise to a presumption of prejudice to Manlove's right of appeal. *See United*

ty against a petitioner. The writ of habeas corpus is in the nature of a collateral attack on a judgment upon which commitment has issued. *Orosco v. Cox,* 75 N.M. 431, 405 P.2d 668 (1965). Its function is not simply to review the record for errors of the trial court, *see Smith v. People,* 71 N.M. 112, 376 P.2d 54 (1962); rather, habeas corpus inquiry is directed to the fairness of the entire proceeding, and a writ will lie when violations of the petitioner's constitutional rights rendered the judgment void by depriving the court of its jurisdiction. *See Johnson v. Cox,* 72 N.M. 55, 380 P.2d 199, *cert. denied,* 375 U.S. 855, 84 S.Ct. 117, 11 L.Ed.2d 82 (1963).

Given the historical role of the writ of habeas corpus as the protector of individual rights, principles of finality have rarely been applied with the same force in habeas corpus proceedings as in ordinary litigation. L. Yackle, *Post-*

*conviction Remedies* § 124 (1981). "Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." *Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963); *see also Adamson v. Ricketts,* 758 F.2d 441, *rehearing granted,* 764 F.2d 1343 (9th Cir.1985), *cert. granted,* 479 U.S. 812, 107 S.Ct. 62, 93 L.Ed.2d 21, *reversed,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (res judicata not absolute bar in habeas corpus petitions); *Johnson v. Lumpkin,* 769 F.2d 630 (9th Cir.1985), *on remand,* 654 F.Supp. 592 (S.D.Cal.1987) (habeas corpus petitioner not collaterally estopped from raising grounds previously dismissed with prejudice); *Johnson v. Wainwright,* 702 F.2d 909 (11th Cir. 1983) (doctrine of res judicata not applicable to habeas corpus relief).

*States v. Taylor,* 607 F.2d 153 (5th Cir. 1979), *appeal after remand,* 631 F.2d 419 (1980); *United States v. Selva,* 559 F.2d 1303 (5th Cir.1977); *cf. State v. Orona,* 92 N.M. 450, 589 P.2d 1041 (1979) (when trial court's order prevented defendant from talking to witness, defendant needed to show no prejudice beyond a reasonable possibility that an avenue of defense was thus made unavailable). Viewing the record, we do not find incredible Cherryhomes' 1982 testimony; therefore, for purposes of our analysis, we assume a fishing trip comment was made, and we accept a presumption of prejudice to Manlove's right of appeal.

 When a defendant raises a reasonable possibility of error involving his constitutional rights, the prosecution must rebut the resulting presumption of prejudice beyond a reasonable doubt. *State v. Jones,* 80 N.M. 753, 461 P.2d 235 (Ct.App. 1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *cf. State v. Zamora,* 91 N.M. 470, 575 P.2d 1355 (Ct.App.), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978); *State v. Spearman,* 84 N.M. 366, 503 P.2d 649 (Ct.App.1972) (statutorily created procedural right). The decision whether this presumption has been overcome is left to the sound discretion of the reviewing court. *See State v. Sacoman,* 107 N.M. 588, 762 P.2d 250 (1988). In deciding whether the state has overcome the presumption of prejudice to the right of appeal, the reviewing court must weigh the possible significance of the missing material to a defendant's right of appeal against such facts proffered by the state as would mitigate or eliminate its significance. That is the issue and balancing task with which this Court is now presented.

In our balancing role, we consider affidavits by Judge Fort, his court reporter, and the court clerk of Roswell that were attached to the State's motion for an additional evidentiary hearing. *Cf. Orosco v. Cox,* 75 N.M. 431, 405 P.2d 668 (1965) (in habeas corpus proceeding, court may receive evidence outside the record). The affidavit of the court reporter affirms that the transcript on appeal was a true and correct transcription of the proceedings held, and that, on Monday, July 9, the court reporter accompanied Judge Fort to Roswell, where Judge Fort heard nineteen separate matters. The clerk of the district court in Roswell affirmed that Judge Fort held court there on Monday, July 9, and she attached to her affidavit certified copies of eight separate orders and judgments signed by Judge Fort and filed with the clerk on that date. In his affidavit, Judge Fort affirmed one of his reasons for denying the continuance was the matters to be heard in Roswell on Monday, July 9, as well as jury trials scheduled for July 10 and July 11. Judge Fort categorically denied the fishing trip statement.

*Denials of continuance not reviewed on same grounds previously decided.* Before venturing to assess the significance of the deleted statement from the transcript of Manlove's trial, we believe it is appropriate to discuss the reasons given on the record for denial of the continuance. The denial of the requested continuance on the grounds that defendant violated local rules assuring timely subpoenas and notice of witnesses has been decided on appeal to have been proper. Although we may question the propriety of that decision, *see McCarty v. State,* 107 N.M. 651, 763 P.2d 360 (1988) (preclusion of important defense testimony not justified as sanction of choice when violation of procedural rule not willful, state was not prejudiced, and preclusion was not necessary to protect the integrity of the adversary system or the efficient administration of justice), we believe principles of finality preclude review of this issue. In *Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963), the Supreme Court held that federal courts may give preclusive effect to previous determinations adverse to a habeas corpus petitioner only if (1) the same ground presented in the subsequent application was determined adversely in the previous proceeding; (2) the prior determination was on the merits; and (3) reaching the merits in the subsequent petition would not serve the ends of justice. In *Kuhlmann v. Wilson,* 477 U.S. 436, 452–53, 106 S.Ct. 2616, 2626, 91 L.Ed.2d 364 (1986), a four Justice plurality of the Supreme Court

interpreted the phrase "the ends of justice" to require a balancing of a prisoner's interest in relitigating claims of constitutional violations with the state's interest in the finality of criminal judgments, including the efficient administration of justice and the state's legitimate interests in punishment and rehabilitation. Writing for the plurality, Justice Powell concluded federal courts should be required to review habeas corpus claims that raise issues identical to those previously decided when allegations of constitutional violations are supplemented by a colorable claim of innocence. *Id.* at 454, 106 S.Ct. at 2627. Such a showing may be made by demonstrating that in light of all the probative evidence, including evidence alleged to have been wrongfully excluded, the trier of fact would have entertained a reasonable doubt of guilt. *Id.* at 454–55, n. 17, 106 S.Ct. at 2627, n. 17.

In addition to the factors noted above, petitioner's claim in *Kuhlmann*, like Manlove's claim here, challenges a decision that is questionable in light of presently accepted legal principles. *See Wilson v. Henderson*, 742 F.2d 741 (2d Cir.1984), *rev'd sub. nom. Kuhlmann v. Wilson.* Although *Kuhlmann*, which interpreted 28 U.S.C. Section 2244(b), is not binding on this Court, the plurality's consideration of the conflicting interests of the state and a habeas corpus petitioner are important to our rationale. Here, the failure to grant a continuance, although depriving the defendant of an opportunity to present evidence probative of the prosecutrix's veracity, does not so strongly implicate the reliability of the original judgment that we believe it necessary to once again review this claim on its merits. In this regard, we view the "reasonable doubt of guilt" standard as akin to the miscarriage of justice standard that we apply in determining fundamental error. *See State v. Escamilla*, 107 N.M. 510, 760 P.2d 1276 (1988).

■ Moreover, we do not believe we now can second-guess the trial court's observation that Cherryhomes' failure to comply with the local rules of procedure rose to a level of willfulness. *See McCarty*, 107 N.M. at 673, 763 P.2d at 362. We note under the balancing test of *McCarty* it is also relevant that the prosecution did not discover Pike was to be called as a witness until the day trial began, and that the court's calendar would have been upset by a continuance. While the eleventh-hour nature of the request for the continuance may have been justified to some extent by Cherryhomes' late entry into the case, *see State v. March*, 105 N.M. 453, 734 P.2d 231 (1987), on balance we do not conclude the error, if any, in refusing to grant the continuance rose to the level of manifest injustice calling for our reconsideration of petitioner's claim.

■ *Conclusion.* We, therefore, consider only the significance of the deleted fishing trip statement. Did the court have a motivation for denying the continuance that could have tainted the validity of the procedural sanction applied? Or, was the statement one to be disregarded? We believe it was the latter. *See State v. Saavedra*, 108 N.M. 38, 766 P.2d 298 (1988) (the denial of a one-week continuance and the granting of a mistrial were based on compelling grounds independent of vacation plans alluded to by the court and disregarded on appeal).

We hold that, on balance, deletion of the fishing trip statement (or "vacation" statement as it was posited to the court of appeals in Manlove's motion to amend the docketing statement), which for the purpose of this balancing test we assume to have in fact been made, when considered with the evidence of court activity in Roswell the following Monday, did not significantly affect defendant's right of appeal, and that any presumption of prejudice has been overcome.

The petition is denied.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.