882 P.2d 527

**Terry D. CLARK, Petitioner,**

v.

**Robert TANSY, Warden, Respondent.**

**No. 19931.**

Supreme Court of New Mexico.

Sept. 7, 1994.

Rehearing Denied Oct. 3, 1994.

Gary C. Mitchell, Ruidoso, for petitioner.

Tom Udall, Atty. Gen., Bill McEuen, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

RANSOM, Justice.

In 1987 Terry Clark was sentenced to death for the kidnapping and murder of nine-year-old Dena Lynn Gore. On direct appeal a divided Court upheld this death sentence even though the prosecutor stressed Clark's future dangerousness and the jury was not informed as to the length of time Clark would serve in prison if he was not sentenced to death. *State v. Clark,* 108 N.M. 288, 772 P.2d 322, *cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989). Pursuant to SCRA 1986, 5–802 (Repl.Pamp.1992), Clark filed a petition for a writ of habeas corpus in the district court, reiterating claims of fundamental error in his sentencing, raising the effect of our decision in *State v. Henderson,* 109 N.M. 655, 658, 789 P.2d 603, 606 (1990) (holding that "fundamental fairness, due process and eighth amendment rationales" require that the jury be given accurate information on the actual meaning of a life sentence), and claiming ineffective assistance of counsel. After a hearing on the habeas corpus petition, the district court entered findings of fact and conclusions of law denying Clark relief. Pursuant to SCRA 1986, 12–501 (Repl.Pamp.1992), Clark filed, and we granted, his petition for a writ of certiorari.

On June 17 of this year the U.S. Supreme Court held that when the prosecution urges a defendant's future dangerousness as cause for the death sentence, the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires that the defendant be given an opportunity to inform the sentencing jury he is parole ineligible. *Simmons v. South Carolina,* — U.S. —, —, 114 S.Ct. 2187, 2192, 129 L.Ed.2d 133 (1994) (Ginsburg, J., concurring) (noting the agreement of the seven-member majority of the Court). Consequently, we reverse and remand for new sentencing proceedings.

We recognize fully that Clark is guilty of shocking crimes that well may merit forfeiture of his life. We are nonetheless compelled to recognize that "[l]aw triumphs when the natural impulses aroused by a shocking crime yield to the safeguards which our civilization has evolved for an administration of criminal justice at once rational and effective." *Watts v. Indiana,* 338 U.S. 49, 55, 69

S.Ct. 1347, 1350, 93 L.Ed. 1801 (1949) (plurality opinion).

*The problem.* In this case the prosecutor specifically relied on Clark's future dangerousness in his argument for the death penalty. He argued:

> [Defense counsel] talked briefly about sentencing in this case and the possible length of time. The question is not when Terry Clark will get out—it's, I'm sorry, it's not if Terry Clark will get out, it's when he'll get out. It is inevitable. And as we tried to point out to you on cross-examination when this man, if this man, is sentenced to life, there are no guarantees. No guarantees. Somewhere down the road is another victim. Whether it's ten years from tomorrow, twenty years from tomorrow, or longer, she's out there, or she will be out there.

*Clark,* 108 N.M. at 296, 772 P.2d at 330 (alteration in original). The prosecutor invited the jury to conclude that Clark posed a future threat to young girls and that the only sure way to avert this threat was to sentence Clark to death. Based on the prosecutor's argument the jury reasonably could have concluded that Clark would be on the streets in as little as ten years, at age forty-one. This conclusion was incorrect. Assuming maximum good time for the noncapital offenses of kidnapping and criminal sexual penetration, a life sentence would have assured incarceration to age eighty-six.

*Simmons v. South Carolina.* In *Simmons* a strong majority of the U.S. Supreme Court reversed a death-penalty judgment of the South Carolina Supreme Court on the ground that the defendant was denied due process of law. Justice Blackmun, announcing the judgment of the Court in language with clear applicability to Clark's efforts to provide his jury with accurate information regarding his parole ineligibility, described the mandate of the Due Process Clause as follows:

> In this case, the jury reasonably may have believed that petitioner could be released on parole if he were not executed. To the extent this misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing petitioner to death and sentencing him to a limited period of incarceration. This

grievous misperception was encouraged by the trial court's refusal to provide the jury with accurate information regarding petitioner's parole ineligibility, and by the State's repeated suggestion that petitioner would pose a future danger to society if he were not executed.

— U.S. at ——, 114 S.Ct. at 2193.

> In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant. Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not. Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole. The trial court's refusal to apprise the jury of information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerousness in its argument to the jury, cannot be reconciled with our well-established precedents interpreting the Due Process Clause.

*Id.* at ——, 114 S.Ct. at 2194.

While Justice Blackmun specifically noted that "[w]e express no opinion on the question whether the result we reach today is also compelled by the Eighth Amendment," *id.* at —— n. 4, 114 S.Ct. at 2193, Justice Souter, with whom Justice Stevens joined, expressed the opinion that

> [T]he [Eighth] Amendment imposes a heightened standard "for reliability in the determination that death is the appropriate punishment in a specific case." Thus, it requires provision of "accurate sentencing information [as] an indispensable prerequisite to a reasoned determination of whether a defendant shall live or die."
>
> . . . .
>
> That same need for heightened reliability also mandates recognition of a capital defendant's right to require instructions on the meaning of the legal terms used to describe the sentences (or sentencing recommendations) a jury is required to consider, in making the reasoned moral choice between sentencing alternatives. Thus,

whenever there is a reasonable likelihood that a juror will misunderstand a sentencing term, a defendant may demand instruction on its meaning, and a death sentence following the refusal of such a request should be vacated as having been "arbitrarily or capriciously" and "wantonly and ... freakishly imposed."

*Simmons,* —— U.S. at ——, 114 S.Ct. at 2198 (Souter and Stevens, JJ., concurring) (citations omitted). Justice Souter concluded that "on matters of law, arguments of counsel do not effectively substitute for statements by the court.... Because ... juries in general are likely to misunderstand the meaning of the term 'life imprisonment' in a given context, the judge must tell the jury what the term means, when the defendant so requests." *Id.* at ——, 114 S.Ct. at 2199 (citation omitted).

In dissent Justice Scalia, joined by Justice Thomas, succinctly declared the holding of the majority to be that *"the Due Process Clause overrides state law* limiting the admissibility of information concerning parole whenever the prosecution argues future dangerousness." *Id.* at ——, 114 S.Ct. at 2203 (emphasis added). According to Justice Scalia, "the regime imposed by today's judgment is undoubtedly reasonable as a matter of policy, but I see nothing to indicate that the Constitution requires it to be followed coast-to-coast. I fear we have read today the first page of a whole new chapter in the 'death-is-different' jurisprudence...." *Id.* at ——, 114 S.Ct. at 2205.

As discussed below, this Court believes that death indeed is different from other sanctions and thus requires greater scrutiny. Furthermore, a majority of this Court now concurs with Justice Souter that the Eighth Amendment requires the jury to be advised of the legal and factual significance of a life sentence in death-penalty proceedings. However, because *Simmons* points to a resolution of Clark's habeas petition on due process grounds, and because we hesitate to decide his petition according to the very Eighth Amendment principles on which a majority of the Supreme Court specifically declined to express an opinion, we do not decide Clark's petition under the "cruel and

unusual punishment" provision of the Eighth Amendment or of Article II, Section 13 of the New Mexico Constitution.

*Propriety of relief under habeas corpus.* In this habeas proceeding Clark raises numerous arguments identical to those rejected on direct appeal to this Court. The State cites *Manlove v. Sullivan,* 108 N.M. 471, 775 P.2d 237 (1989), for the proposition that principles of finality prevent a habeas petitioner from relitigating issues decided against him in a prior proceeding. We believe that the State reads *Manlove* too broadly.

In *Manlove* this Court stated that "collateral estoppel principles may, at the discretion of a subsequent habeas corpus court, prevent relitigation of issues argued and decided *on a previous habeas corpus petition."* *Id.* at 475, 775 P.2d at 241 (emphasis added). *Manlove* specifically addressed the preclusive effect to be given issues raised in successive habeas petitions rather than the preclusive effect to be given issues previously raised on direct appeal. As we observed in *Duncan v. Kerby,* 115 N.M. 344, 347, 851 P.2d 466, 469 (1993), the *Manlove* preclusion principle recognizes that "[t]he successive-writ petitioner has already enjoyed the opportunity to fully explore his constitutional claims in the post-conviction setting ... and consequently ... is in a weaker position to argue that equity confers yet another post-conviction opportunity to make his claim." The same considerations do not inhere in the reexamination of issues raised in a first petition for habeas relief. *Id.*

Historically the writ of habeas corpus has been used to protect individual rights from erroneous deprivation. *Manlove,* 108 N.M. at 475–76 n. 3, 775 P.2d at 241–42 n. 3. It "has become a procedure for assuring that one is not deprived of life or liberty in derogation of a constitutional right." *Hurst v. Cook,* 777 P.2d 1029, 1034 (Utah 1989). In light of the essential role played by the writ of habeas corpus, courts rarely apply principles of finality in habeas corpus proceedings with the same force as they do in ordinary litigation. *See* Larry W. Yackle, *Postconviction Remedies* § 124, at 479 (1981). "Conventional notions of finality of litigation have no place where life or liberty is at stake and

infringement of constitutional rights is alleged." *Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963).

With these principles in mind, the Supreme Court has held that a habeas petitioner may relitigate an issue decided against him on direct appeal when there has been an intervening change in the law; principles of finality do not bar such relitigation. *Davis v. United States,* 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974); *see also Chapman v. United States,* 547 F.2d 1240, 1242–43 (5th Cir.) (reviewing habeas claim that prosecution's reference to defendant's post-arrest silence during trial violated his due process rights despite adverse decision on direct appeal), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). Other courts have endorsed a rule allowing relitigation of issues in postconviction settings that were determined previously on direct appeal when there has been an intervening change in the law *or* the facts. *See, e.g., Norris v. United States,* 687 F.2d 899, 900 (7th Cir.1982); *Hurst,* 777 P.2d at 1036; *cf. Taylor v. United States,* 798 F.2d 271, 273–74 (7th Cir.1986) (reviewing petitioner's claims of selective prosecution even though not raised on appeal when facts would not have been adequately developed at time of appeal), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 983 (1987). This Court adopted a similar rule in *Duncan,* 115 N.M. at 346, 851 P.2d at 468: "A habeas corpus petitioner will not be precluded ... from raising issues in habeas corpus proceedings that could have been raised on direct appeal either when fundamental error has occurred or when an adequate record to address the claim properly was not available on direct appeal." (Citation omitted.)

■ We hold that when a habeas petitioner can show that there has been an intervening change of law or fact, or that the ends of justice would otherwise be served, principles of finality do not bar relitigation of an issue adversely decided on direct appeal. *See Sanders,* 373 U.S. at 16, 83 S.Ct. at 1077–78 (stating that habeas petitioner should be permitted to show that ends of justice require redetermination of a previously considered

ground for relief). A petitioner's presentation of a claim in his first application for postconviction relief does not *require* either a trial or an appellate court to readdress the merits of an issue squarely addressed and decided against the petitioner on direct appeal. Nonetheless, when a claim has not been previously addressed in a postconviction proceeding there is less reason for the habeas-corpus policy of preserving life and liberty against illegal deprivation to be subordinated to the policy of adjudicative finality. *Cf. Reese v. State,* 106 N.M. 505, 507, 745 P.2d 1153, 1155 (1987) (stating that court may deviate from doctrine of law of the case in order to avoid manifest injustice).

■ After Clark's direct appeal to this Court the Supreme Court held in *Simmons* that when the prosecution urges a defendant's future dangerousness as cause for the death sentence, the defendant must be given an opportunity to inform the sentencing jury he is parole ineligible. —— U.S. at ——, 114 S.Ct. at 2194. Because under *Simmons* it now has become clear that the Due Process Clause assures the defendant a right to have the jury informed of the period of his parole ineligibility, because of the nature of the writ of habeas corpus, and because "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination," *California v. Ramos,* 463 U.S. 992, 998–99, 103 S.Ct. 3446, 3452, 77 L.Ed.2d 1171 (1983), *quoted in State v. Henderson,* 109 N.M. 655, 659, 789 P.2d 603, 607 (1990), we readdress whether the length of Clark's incarceration without the possibility of parole (in the event he was not to be sentenced to death) must necessarily have been disclosed to the jury prior to its capital sentencing deliberations and whether the court must necessarily have imposed sentence for Clark's noncapital crimes before the jury deliberated.

*The meaning of a life sentence.* In Clark's direct appeal this Court acknowledged that "[i]n capital cases the defendant is entitled to have the sentencing jury consider any relevant mitigating evidence." *Clark,* 108 N.M. at 306, 772 P.2d at 340. Under SCRA 1986, 14–7029, the jury is instructed that "[a] miti-

gating circumstance is any conduct, circumstance or thing which would lead you to decide not to impose the death penalty." This Court specifically agreed with Clark that the terms of his sentence for the kidnapping charge would affect significantly when he would be eligible for parole. 108 N.M. at 294, 772 P.2d at 328. The Court divided, however, over whether the meaning of a life sentence was relevant mitigating information under the Eighth Amendment. Whether it was relevant mitigating information under the Due Process Clause was not considered.

The Supreme Court has held that future dangerousness is an appropriate consideration for capital sentencing juries. *E.g.*, *Jurek v. Texas*, 428 U.S. 262, 275, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976) (plurality opinion) (noting that "any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose"); *Ramos*, 463 U.S. 992, 1003 n. 17, 103 S.Ct. 3446, 3454 n. 17 (explaining that it is proper for sentencing jury in capital case to consider "the defendant's potential for reform and whether his probable future behavior counsels against the desirability of his release into society"). When the prosecution relies on future dangerousness as part of its case for death, however, due process requires that the defendant be given an opportunity to present evidence in rebuttal. *Skipper v. South Carolina*, 476 U.S. 1, 5 n. 1, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1 (1986) (stating requirement that defendant be allowed to present evidence in rebuttal stems from "the elemental due process requirement that a defendant not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain.'" (quoting *Gardner v. Florida*, 430 U.S. 349, 362, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977))). It was the import of *Jurek*, *Ramos*, and *Skipper* that divided the Court in *Clark*. Although *Simmons* did not decide whether the Eighth Amendment requires a jury to be informed of the meaning of a life sentence, it reveals that notions of fundamental fairness embodied in the Due Process Clause require that the defendant be allowed to rebut, with all relevant mitigating evidence, the prosecutor's argument that the defendant's future danger-

ousness is cause for the death penalty, and relevant mitigating evidence includes the length of incarceration facing the defendant if he is not sentenced to death. —— U.S. at ——, 114 S.Ct. at 2193.

We have already stated the problem in this case: the prosecutor specifically relied on Clark's future dangerousness in his argument for the death penalty. Assuming maximum good time for the noncapital offenses, a life sentence would have assured incarceration to age eighty-six, not age forty-one as argued by the prosecutor. The jury must have had a fundamental misunderstanding of the alternatives it faced. "The State thus succeeded in securing a death sentence on the ground, at least in part, of petitioner's future dangerousness, while at the same time concealing from the sentencing jury the true meaning of its noncapital sentencing alternative." *Simmons*, —— U.S. at ——, 114 S.Ct. at 2193.

The length of incarceration facing a capital defendant before he can be considered for parole, as an alternative to a death sentence, is information that must be provided to a jury before it deliberates on the capital charge *if* the defendant decides it is in his best interest to have the jury apprised of this information. To withhold this information after it is requested violates the petitioner's due process right to have accurate information presented to the jury to rebut the prosecution's case for death. In *Henderson*, 109 N.M. at 659, 789 P.2d at 607, we recognized that accurate information on the meaning of a life sentence under New Mexico law is relevant evidence in mitigation because it might cause the jury to decline to impose the death sentence. Under *Simmons*, although the states may choose whether to allow jury consideration of a defendant's eligibility for release from incarceration, the Due Process Clause assures that when the prosecutor urges the defendant's future dangerousness as cause for the death penalty the jury will be accurately informed of the period of his parole ineligibility. The failure to provide the jury with such accurate information violated Clark's due process rights, and there-

fore, under *Simmons* and *Henderson,* his death sentence must be vacated.

*Right to have noncapital sentences imposed prior to jury deliberation.* Our holding raises a related issue: Must a court impose sentence for noncapital offenses before jury deliberations on a capital sentence if requested to do so by the defendant? The defendant in *Henderson,* like Clark, had requested that he be sentenced on noncapital charges prior to jury deliberation on the death penalty. 109 N.M. at 659, 789 P.2d at 607. The *Henderson* Court found no error in refusing to impose sentence if the jury is instructed on the range of sentences available. *Id.* The Court indicated, however, "that the better course of conduct for a trial court to follow would be first to sentence the defendant on the noncapital offenses if requested." *Id.*

■ Because the length of incarceration facing a defendant if he is not sentenced to death is accurate and relevant information that must be presented to a capital jury to rebut the prosecution's case for death, we conclude that the trial court has no discretion to delay imposing sentence on noncapital charges. If the defendant is sentenced by a judge, the judge will know the precise terms of the noncapital sentence facing the defendant and will consider this in deciding whether to impose the death penalty. Because the precise terms of a defendant's noncapital sentence may affect when he is eligible for parole, and because this may help the defendant rebut the prosecution's case for death, we hold that once the length of incarceration facing a convicted capital felon is asserted by the defendant to be mitigating evidence, the court cannot choose between an instruction detailing the actual sentence imposed for noncapital offenses and an instruction detailing the range of sentencing alternatives; the trial court must impose sentence on noncapital charges before jury deliberations on the capital charge. We overrule *Henderson* on this point.

■ Although the majority in *Clark* refused to apply the doctrine of fundamental error, it did indicate that placing the issue of the parole laws before the jury was error. *Id.* at 297, 772 P.2d at 331. To the extent that the majority was referring to the extensive testimony and argument over whether good-time awards were applicable toward a life sentence and whether the legislature or some other governmental entity could affect such awards in the future, the *Clark* majority certainly was correct. Allowing the prosecution to argue about the possibility of executive commutation, or pardon, or possible legislative change, invites juror speculation about matters that cannot be proven. As the Ninth Circuit recently observed in striking down a jury instruction about possible commutation

> the requirements of the Eighth and Fourteenth Amendments dictate that: "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."

*Hamilton v. Vasquez,* 17 F.3d 1149, 1159 (9th Cir.) (quoting *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (plurality opinion)), *cert. denied,* —— U.S. ——, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994). Allowing the jury to speculate about *possible* future executive or legislative actions cannot be reconciled with the requirement that the jury's sentencing discretion be limited and directed or the requirement that the jury have accurate information about the sentencing alternatives it is to consider. What constitutes a life sentence, and the earliest date a convicted capital felon might be considered for parole under *existing* legislation, are questions of law; the trial court can determine the answers to these questions and should, if requested, instruct the sentencing jury accordingly.

■ Clark now has been sentenced on his noncapital offense for kidnapping (twenty-six years of imprisonment), and the trial court has ordered that sentence to be served consecutively to his existing sentence for criminal sexual penetration in the course of a kidnapping (twenty-four years). On remand the sentencing jury shall be apprised of the earliest point in time that Clark can be considered for parole should the jury choose to

sentence him to life imprisonment. *Cf. Martinez v. State,* 108 N.M. 382, 772 P.2d 1305 (1989) (holding that capital felons must be imprisoned for at least thirty years before being given a parole hearing, regardless of any meritorious deductions allowed to noncapital felons).

▪ *Other issues.* While most of the other issues Clark raises are now moot, some bear comment if only to express our satisfaction with the prior resolution of those issues and to remove any lingering uncertainty. Specifically, Clark argues that the jury instructions used in his sentencing "impermissibly skew[ed] the process toward a return of a death sentence." Clark's objections are the same as those he raised in the direct appeal, and we are satisfied with the treatment of those claims. On the question whether the instructions precluded consideration of any proffered mitigating circumstance unless the jury agreed unanimously on its presence, *see Mills v. Maryland,* 486 U.S. 367, 374–75, 108 S.Ct. 1860, 1865–66, 100 L.Ed.2d 384 (1988), we reaffirm our earlier conclusion that reversal on this point was unnecessary, *see Clark,* 108 N.M. at 309–10, 322 P.2d at 343–44. In order to increase the reliability of the proceedings, however, the jury should be instructed that it need not unanimously agree on the presence of a mitigating circumstance before considering it. *See Henderson,* 109 N.M. at 664, 789 P.2d at 612.

▪ Clark again argues that the aggravating circumstance of murder of a witness to a crime for the purpose of preventing the reporting of that crime, *see* NMSA 1978, § 31–20A–5(G) (Repl.Pamp.1994), is overbroad and unconstitutional. There is no merit to this argument. As indicated in *Clark,* in order to prove the existence of this aggravating circumstance the state must prove that the killing was motivated by a desire to escape criminal prosecution for an earlier felony committed against the victim or some other person. *See Clark,* 108 N.M. at 304, 772 P.2d at 338. The need for proof of motivation is sufficient to distinguish between this aggravating circumstance and that of a killing committed during the commission of a kidnapping, the second statutory aggra-

vating circumstance submitted to the jury in Clark's case. *See* § 31–20A–5(B).

Clark also argues that the guidelines for proportionality review established in *State v. Garcia,* 99 N.M. 771, 780, 664 P.2d 969, 978, *cert. denied,* 462 U.S. 1112, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983), are unduly restrictive and that no mechanism currently exists to provide this Court with proportionality information. The merits of these arguments can be taken up after Clark's resentencing if this Court is called upon to review a sentence of death in order to determine whether it is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Section 31–20A–4(C)(4).

▪ Finally, Clark raises for the first time an issue of ineffective assistance of counsel. We stated recently that we are reluctant to grant review in postconviction proceedings on issues that could have been, but were not, raised on direct appeal, even when those issues involve important constitutional questions. *Swafford v. State,* 112 N.M. 3, 6 n. 1, 810 P.2d 1223, 1226 n. 1 (1991). Nevertheless, we will sometimes exercise our discretion to engage in such review of questions that involve the jurisdictional power of the lower court or important constitutional questions. *See id.*

With an order for new sentencing proceedings Clark's claims of ineffective assistance of counsel become largely moot. Only two of the specific claims of inadequate performance have any relationship to the entry of his guilty plea. Clark complains that his attorneys advised him to plead guilty "rather than to attempt to enter a qualified or no-contest plea," and that his attorneys failed until February 1987 to move to withdraw his plea, despite the governor's decision on December 30, 1986, to deny clemency. We are satisfied, however, for the reasons stated in *Clark,* that the trial court committed no error in refusing to allow him to withdraw his guilty plea. *See* 108 N.M. at 292–93, 772 P.2d at 326–27. No new evidence has been presented that would cause us to reevaluate that disposition. For similar reasons, the two claims Clark makes regarding his attor-

neys' performance in connection with that plea do not merit further examination.

*Conclusion.* Under *Simmons v. South Carolina,* and in light of our previous decision in *Henderson,* to allow the penalty of death to be imposed under these circumstances would be a violation of the Due Process Clause. We therefore vacate Clark's death sentence and remand the cause to the district court for resentencing.

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and FRANCHINI, J., concur.