# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 16, 2007

Charles R. Fulbruge III
Clerk

No. 06-70006

KHRISTIAN OLIVER

Petitioner-Appellant

V.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division
No. 1:04-cv-00041-RHC

Before SMITH, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Khristian Oliver ("Oliver") seeks habeas corpus relief from his conviction and sentence of death for the murder of Joe Collins ("Collins"). After denying habeas relief on all claims, the district court granted Oliver a certificate of appealability ("COA") on two issues: (1) whether he suffered a denial of his right to an impartial jury under the Sixth Amendment when jurors consulted Biblical scripture that called for death as the punishment for murder, and (2) whether

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Oliver suffered a denial of his right to a punishment determination based upon discretion carefully guided by law under the Eighth Amendment because several jurors consulted the Bible during deliberations. Oliver appeals the denial of a COA for three of his claims and the denial of habeas relief for the claims in which he received a COA. He also seeks either a stay and abatement of the federal proceeding so that he may go back to state court for an evidentiary hearing or a federal evidentiary hearing regarding his Bible-related claims. After reviewing the record, we DENY Oliver's request for a COA on his three additional claims. We also DENY Oliver's request for a stay and abatement for a state hearing and his request for a federal evidentiary hearing on his Bible-related claims. Finally, we set this case for oral argument regarding the remaining claims and direct the parties to focus on specific issues, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The district court recounted the facts as follows:

Oliver began a crime spree about a year and [a] half before the incident which resulted in his conviction in this case. There were over a dozen burglaries and many of them involved the use of weapons. On March 17, 1998, Oliver, his girlfriend Sonya Reed, Bennie Rubalcaba (age 16) and his brother, Lonny Rubalcaba (age 15), stopped at the house of the victim, Joe Collins, in rural Nagcodoches County. Oliver and Lonny Rubalcaba went to burglarize the house, carrying Oliver's .380 caliber pistol, a handful of bullets and bolt cutters. Reed and Bennie Rubalcaba stayed in the truck. While the two were in the house, Collins came home. Collins shot Lonny Rubalcaba in the leg as he and Oliver were trying to escape. Oliver then shot Collins five times. At least two of the shots were fired while the victim lay on his back on the ground outside his house. As Bennie Rubalcaba helped his brother Lonny back to the truck he turned and saw Oliver striking Collins several times in the head with a rifle butt, while Collins was lying on the ground. Collins's skull was severely fractured and his face was disfigured nearly beyond recognition.

Oliver then joined the group in the truck. The group took Lonny Rubalcaba to the hospital and went to the Sheriff's office and filed reports saying that someone had driven by and shot Lonny while they were all at a farm. The next day, deputies picked up Bennie Rubalcaba and questioned him. Bennie then gave a written statement admitting what had actually happened. The same morning, police questioned Lonny Rubalcaba, who, after originally repeating the story about the farm, gave a second written statement coinciding with his brother's second statement. Police located Oliver and Reed at a Houston motel and arrested them.

A jury convicted Oliver of capital murder based on his killing of Collins during the commission of a burglary. The Texas Court of Criminal Appeals ("TCCA") affirmed Oliver's conviction and sentence of death. Oliver v. State, No. 73,837, slip op. (Tex. Crim. App. April 17, 2002) (unpublished). The United States Supreme Court denied his petition for a writ of certiorari. Oliver v. Texas, 537 U.S. 1161 (2003). The TCCA denied Oliver's petition for post-conviction relief, and the United States Supreme Court again denied his petition for a writ of certiorari. Oliver v. Texas, 538 U.S. 1001 (2003). On January 21, 2004, Oliver filed an application for a writ of habeas corpus with the district court. The Appellee Nathaniel Quarterman (the "Director") moved for summary judgment on all of Oliver's claims. The district court granted the Director's motions in two separate orders on September 29, 2005, and November 9, 2005. The court granted a COA for two issues but denied a COA for the remaining claims.

## II. Analysis

### A. Oliver's requests for a COA

#### 1. Standard for issuing a COA

Because Oliver filed his habeas petition in the district court after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, AEDPA governs his petition. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under AEDPA, Oliver must obtain a COA from either the district court or appellate court before he can appeal the denial

of habeas relief. See 28 U.S.C. § 2253(c)(1); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To obtain a COA, Oliver must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, if Oliver can show that the district court's application of AEDPA to his constitutional claims is debatable among reasonable jurists, we will issue a COA. Miller-El, 537 U.S. at 336.

In deciding whether to grant a COA, we are limited "to a threshold inquiry into the underlying merit of [the petitioner's] claims." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)). Our analysis "requires an overview of the claims in the habeas petition and a general assessment of their merits" rather than a "full consideration of the factual or legal bases adduced in support of the claims." Id. at 336. "Because the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor." Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir. 2000).

In deciding whether to grant a COA, we recognize that AEDPA imposes a deferential standard of review on a federal habeas court with respect to claims adjudicated on the merits in state court. A federal court cannot grant habeas relief unless the state court adjudication of that claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); see Wiggins v. Smith, 539 U.S. 510, 520 (2003). A decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]."

(Terry) Williams v. Taylor, 529 U.S. 362, 405 (2000). A decision involves an unreasonable application of Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court precedent] to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. We presume the facts of the case to be correct unless Oliver meets his burden of rebutting that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

2. <u>Reasonable jurists would not debate that Apprendi is inapplicable to the mitigation special question</u>

Oliver argues that the trial court erred in failing to instruct the jury that the State had the burden of proof beyond a reasonable doubt on the issue of mitigation during the punishment phase of the trial. He contends that the Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584 (2002), extend the requirement of proof beyond a reasonable doubt to a jury's determination of mitigating factors that would warrant a sentence of life imprisonment instead of death. In Apprendi, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Oliver contends that Texas's capital murder statute provides for life imprisonment as the maximum penalty, and that death is the penalty only if the jury answers both "special issues" questions in the proscribed way. Therefore, Oliver claims, Texas's statute violates Apprendi because it allows a jury to "increase" the maximum penalty to death without the State showing the absence of mitigating factors beyond a reasonable doubt.

Texas law regarding the death penalty first requires a jury to find the defendant guilty of a capital felony. See TEX. CODE CRIM. PROC. ANN. art. 37.071 § 1 (Vernon 2006). If the state seeks the death penalty, then the trial court must

conduct a second punishment proceeding. Id. § 2(a)(1). During deliberations on whether to impose the death penalty, the jury must answer two "special issues" questions: First, "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," and second, "whether . . . there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed." Id. §§ 2(b)(1), (2)(e)(1). The court will impose the death penalty only if the jury unanimously answers the first question "yes" and the second question "no." Id. That is, the jury must find that there are aggravating factors and insufficient mitigating factors.

Reasonable jurists would not debate that Apprendi is inapplicable to the jury's determination of mitigating factors. In Apprendi, the Supreme Court specifically distinguished between "facts in aggravation of punishment and facts in mitigation," stating that burden-of-proof requirements are "absent" from a scheme that allows a judge to impose a sentence below the maximum penalty based on mitigating factors. Apprendi, 530 U.S. at 490 n.16 (noting that in reducing a sentence based on mitigating factors, a judge is "neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone"); see also Ring, 536 U.S. at 597 n.4 (noting that its decision that a sentencing judge may not, sitting alone, determine the presence or absence of aggravating factors does not extend to the finding of mitigating circumstances); Rowell v. Dretke, 398 F.3d 370, 376-77 (5th Cir. 2005) (noting that Ring did not apply to the burden of proof for mitigating factors because the Court "focused exclusively on certain judicial findings regarding aggravating factors"). Similarly, in Walton v. Arizona, the Court stated that "[s]o long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged,

or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency." 497 U.S. 639, 650 (1990), overruled on other grounds, Ring, 536 U.S. at 584. More recently, the Supreme Court upheld Kansas's death penalty scheme that placed the burden of proving the existence of aggravating factors on the state but required the defendant to offer any mitigating evidence. Kansas v. Marsh, 126 S. Ct. 2516, 2524 (2006); see id. at 2527 ("Significantly, although the defendant appropriately bears the burden of proffering mitigating circumstances—a burden of production—he never bears the burden of demonstrating that mitigating circumstances outweigh aggravating circumstances."). Plainly, therefore, if a state's scheme is constitutional when it places the burden of production for mitigating factors on the defendant, then Texas's death penalty statute also comports with Supreme Court precedent because it leaves open who has the burden of proof for mitigating factors.

This court's cases also have upheld Texas's scheme of not instructing the jury on who has the burden of proof for mitigating factors. See Granados v. Quarterman, 455 F.3d 529, 537 (5th Cir.), cert denied, 127 S. Ct. 732 (2006). In Granados, the court granted a COA to a death penalty habeas applicant on this very same claim and subsequently rejected the applicant's argument after additional briefing. Id. In so doing, the court noted that death—not life imprisonment—is the maximum sentence for a capital conviction under Texas law. Id. "Put another way, a finding of mitigating circumstances reduces a sentence from death, rather than increasing it to death." Id. Similarly, this court noted that "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." Rowell, 398 F.3d at 378; see also Ortiz v. Quarterman, No. 06-70020, 2007 WL 2936244, at *10 (5th Cir. Oct. 10, 2007) (rejecting a COA for this exact same

claim); Scheanette v. Quarterman, 482 F.3d 815, 828 (5th Cir. 2007) (same). Given the extensive Supreme Court and circuit precedent, reasonable jurists would not debate that Apprendi has no application to Texas's scheme of leaving open who has the burden of proof for the mitigation special issue. We therefore DENY Oliver's request for a COA on this claim.

> 3. <u>Reasonable jurists would not debate that Penry II does not apply to the lack of jury instructions regarding mitigation</u>

Oliver contends that Texas's "special issues" questions—which place the burden of proof on the State to show aggravating but not mitigating factors—sends "mixed signals" to the jury in violation of Penry v. Johnson (Penry II), 532 U.S. 782, 802 (2001). Oliver argues that failing to assign a burden of proof for the mitigation factors produces a confusing effect and encourages jurors to evaluate the evidence in inconsistent ways.

In Penry II, the Supreme Court struck down a judicially crafted jury instruction because it was confusing and, in effect, required the jury to answer the special issues dishonestly in order to give effect to the defendant's mitigating evidence. Id. at 801. The Court rejected the instruction as sending "mixed signals" to the jury. Id. at 802. The Court, however, implicitly upheld Texas's current scheme:

> A clearly drafted catchall instruction on mitigating evidence also might have complied with [the Court's precedents]. Texas' current capital sentencing scheme (revised after Penry's second trial and sentencing) provides a helpful frame of reference. Texas now requires the jury to decide "[w]hether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed." TEX. CODE CRIM. PROC. ANN. art. 37.071(2)(e)(1) (Vernon Supp. 2001). . . . At the very least, the brevity and clarity of this instruction highlight the confusing nature of the supplemental instruction actually given,

> and indicate that the trial court had adequate alternatives available to it as it drafted the instructions for Penry's trial.

Id. at 803. Far from rejecting the current scheme regarding mitigation, therefore, the Supreme Court implicitly endorsed it. See, e.g., Coleman v. Quarterman, 456 F.3d 537, 542 (5th Cir. 2006), cert denied, 127 S. Ct. 2030 (2007) (quoting Rowell, 398 F.3d at 378) ("[N]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof."). Oliver has failed to make any plausible argument that Texas's mitigation special issue does not allow the jury to consider and give effect to a defendant's mitigating evidence. Oliver also points to no other cases to support his position. Thus, Oliver has failed to explain why the district court's decision amounted to a violation of "clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Reasonable jurists would not debate that the district court properly rejected Oliver's claim. We therefore DENY Oliver's request for a COA on this claim.

### 4. Reasonable jurists would not debate that the district court did not err in rejecting Oliver's parole instruction claim

Oliver argues that the trial court's failure to instruct the jury that a life sentence would require Oliver to spend forty years in prison before becoming eligible for parole violated the Eighth Amendment's requirement of heightened reliability in the jury instructions. He rests his argument on an "evolving standard regarding parole instructions" that he claims mandated his requested jury charge. Specifically, he argues that during his trial, in April 1999, the Texas legislature considered, and then passed, a law requiring an instruction that notified the jury that the defendant would not be eligible for parole for forty years. See TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(e)(2)(B) (Vernon 1999).[1]

---

[1] The new instruction (now no longer in effect), for crimes committed after September 1, 1999, read:

This law became effective for crimes committed on or after September 1, 1999. Act approved May 21, 1999, 76th Leg. R.S., ch. 140, § 2, 1999 Tex. Sess. Law. Serv. 140 (Vernon). Oliver correctly concedes that the amended statute does not apply retroactively to his trial and instead argues that the legislative hearing that culminated in the revised jury instruction represented an "evolving standard" that required the jury to know, even before the law took effect, of Oliver's ineligibility for parole for forty years.

In Simmons v. South Carolina, the Supreme Court ruled that a capital defendant has a constitutional right to inform the jury of his ineligibility for parole when the state's statute provides for a life sentence without the possibility of parole as the alternative to the death penalty. 512 U.S. 154, 168-69 (1994) (plurality opinion). The plurality specifically exempted from its decision those state statutes that provide for the possibility of parole. Id. at 168 ("In a State in which parole is available, how the jury's knowledge of parole availability will affect the decision whether or not to impose the death penalty is speculative, and we shall not lightly second-guess a decision whether or not to inform a jury of information regarding parole."). In Ramdass v. Angelone, the Court reiterated that the Simmons rule applies only when the defendant is ineligible for parole

---

> Under the law applicable in this case, if the defendant is sentenced to imprisonment in the institutional division of the Texas Department of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without consideration of any good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

See TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(e)(2)(B) (Vernon 1999). Texas has since amended its statutes to provide for life without parole as the alternative to the death penalty and to instruct the jury of this fact. See id. § 2(e)(2)(B) (Vernon 2006) (The Court shall "charge the jury that a defendant sentenced to confinement for life without parole under this article is ineligible for release from the department on parole.").

for life under state law. 530 U.S. 156, 166-67 (2000) (plurality opinion) (holding that the trial judge did not have to provide a jury instruction on a life sentence under Simmons because the defendant was not actually parole ineligible at the time of his capital sentencing). Although the Supreme Court decided these cases under due process rationale and not the Eighth Amendment, we find them instructive as to the lack of an evolving standard requiring a jury instruction regarding a Texas statute that allowed for the possibility of parole.

Indeed, we have rejected similar claims from other habeas petitioners. See Thacker v. Dretke, 396 F.3d 607, 617 (5th Cir. 2005) ("Since Simmons was decided, we have repeatedly held that neither the Due Process clause nor the Eighth Amendment requires Texas to allow presentation of parole eligibility issues, because Texas does not offer, as an alternative to capital punishment, life imprisonment without possibility of parole.") (footnote omitted); Rudd v. Johnson, 256 F.3d 317, 320-21 (5th Cir. 2001) (rejecting a COA for this exact same claim); Johnson v. Scott, 68 F.3d 106, 112 (5th Cir. 1995) ("We have consistently held . . . that neither the due process clause nor the Eighth Amendment compels instructions on parole in Texas.").

Given this precedent,[2] reasonable jurists would not debate that there is no "evolving standard" that required the trial court to provide Oliver's requested jury instruction. See Thacker, 396 F.3d at 617 ("Thus, settled precedent makes pellucid the reasonableness of the state court's rejection of [the habeas petitioner's] argument that Simmons and its progeny require that he be able to raise parole eligibility with the jury. The district court's denial of his claims,

---

[2] The only case that Oliver cites to support his position is Clark v. Tansy, 882 P.2d 527, 533 (N.M. 1994), where the New Mexico Supreme Court held that due process required a jury instruction that notified the jury as to the length of incarceration the defendant would face before becoming eligible for parole if he is not sentenced to death. Clark provides little support, however, because the court explicitly chose not to decide the case on Eighth Amendment grounds. Id. at 490. Moreover, even if Clark supports Oliver's position, it is hardly enough evidence to constitute an "evolving standard."

therefore, is not reasonably debatable and cannot justify the issuance of a COA."). We therefore DENY Oliver's request for a COA on this claim.[3]

B.   Oliver's claims for which he received a COA

The district court rejected Oliver's request for habeas relief but granted a COA on two claims related to several jurors' alleged use of the Bible during jury deliberations. Oliver contends that evidence from his state court post-conviction hearing on his motion for a new trial, as well as additional evidence uncovered after that hearing, demonstrates that jurors consulted the Bible when considering whether to impose death or life imprisonment during the punishment phase of his trial. Oliver argues that any use of the Bible during jury deliberations violated his rights under the Sixth and Eighth Amendments. Oliver also asks this court either to stay this proceeding so that the state court can conduct an additional hearing based on the newly-discovered evidence or remand to the federal district court for an evidentiary hearing.

   1.   Oliver's request for a stay and abatement or for an evidentiary hearing is without merit

Oliver argues that he is entitled to, and never received, a hearing on the additional evidence he uncovered from an interview between a foreign journalist and juror Michael Brenneisen (the "Brenneisen interview"). This interview took place in February 2002, one month after Oliver had timely submitted his habeas application to the TCCA. In the interview, Brenneisen stated that jurors relied on the Bible in making their decision during the punishment phase of

---

[3] We also note that Oliver's requested jury instruction would amount to a "new rule" in violation of the non-retroactivity principle of Teague v. Lane, 489 U.S. 288, 310 (1989). See Thacker, 396 F.3d at 617 n.15 ("Although [the habeas petitioner] argues at length that applying Simmons in the way he proposes would merely be an unremarkable application of existing precedent, this is plainly not the case. Given the volume of caselaw in this circuit holding that, despite Simmons, the Fourteenth and Eighth Amendments do not require Texas to allow discussion of parole eligibility in capital trials, a decision to the contrary here would undoubtedly constitute a 'new rule' under Teague and is therefore barred.").

deliberations.[4] Upon learning of the interview, Oliver submitted to the TCCA an "Objection[] to Disposition Without Evidentiary Hearing and Motion for Extension of Time to File Habeas Findings of Fact and Conclusions of Law." The TCCA deemed this motion to be a subsequent application for habeas corpus because Oliver submitted it after the state law deadline for an initial writ of habeas corpus. The court therefore dismissed the subsequent application as an abuse of the writ.

Oliver then filed his federal habeas application in the district court. The court denied his motion to stay the federal proceeding so that he could seek a hearing in state court based on his "new" evidence. The court determined that "the appropriate relief [when a habeas applicant asserts that he has not exhausted his claim in the state court based on newly discovered evidence] . . . is for the federal court to consider the new evidence, not to remand the case to the state court."[5] Oliver submitted a transcript of the interview to the district court. The court denied Oliver's request for a federal hearing on this issue. In particular, the court ruled that under 28 U.S.C. § 2254(e)(2), Oliver was not entitled to a hearing because he did not act with "due diligence" to exhaust his claim in the state post-conviction hearing. The district court also ruled that Oliver failed to meet the second prong of § 2254(e)(2) because he failed to show that "but for relying on the Bible, no reasonable juror would have answered the special issues in the way that resulted in his receiving a death sentence." The district court then denied habeas relief on his two claims related to the jury's use of the Bible.

---

[4] Oliver claims that Brenneisen's interview confirms and bolsters the evidence from the four jurors who testified during the state post-conviction hearing.

[5] It is not clear whether the district court relied on the Brenneisen interview in making its decision on the merits of Oliver's claim. Instead, the district court focused on whether Oliver was entitled to a hearing and spent little time analyzing the underlying substantive issues.

Oliver argues that this court should stay and abate the federal proceeding so that he may go back to the state court and obtain a hearing on his claim. The flaw in Oliver's argument, however, is that the state court already refused to grant him a hearing. The TCCA already considered his request to stay the proceeding so that he could seek a hearing regarding the information from the Brenneisen interview, and it deemed Oliver's request to be a subsequent application for habeas corpus that is barred under state law. Oliver presents no arguments as to why the state court would now grant him a hearing. A stay and abatement, therefore, would amount to nothing more than an unnecessary and fruitless delay.

Nor is Oliver entitled to a hearing in federal court. The district court applied the correct standard under § 2254(e)(2) regarding Oliver's request for an evidentiary hearing in federal court.

Section 2254 (e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

As the district court correctly noted, Oliver fails to meet subsection (A)(ii) because Oliver could have discovered the evidence from the Brenneisen

interview through the exercise of due diligence.[6] All Oliver had to do to uncover Brenneisen's testimony was to call him to the stand during the state post-conviction hearing.[7]

In sum, Oliver has presented no authority that would allow us to stay and abate this proceeding so that the state court can conduct an evidentiary hearing. Even if we did stay the federal proceeding, Oliver has failed to show why the state court would grant him a hearing after it denied the exact same request in its habeas decision. Further, Oliver failed to meet the stringent standard in § 2254(e)(2) that would allow a federal court to conduct an evidentiary hearing. Congress has decided that a habeas applicant must jump a high hurdle before a federal court can grant an evidentiary hearing, especially when the applicant failed to develop the factual basis of his claim in state court. Therefore, we DENY Oliver's request for a stay and abatement and for an evidentiary hearing.

2.    Substantive merits of Oliver's Bible claims

Oral argument will assist the court in determining if Oliver is entitled to habeas relief given the evidence presented in the state court post-conviction hearing regarding the jury's consultation of the Bible during deliberations. Specifically, the parties are directed to focus on the following two issues: (1) as

---

[6] We make no decision regarding whether the district court correctly found that Oliver failed to meet subsection (B) because, "but for relying on the Bible, no reasonable juror would have answered the special issues in the way that resulted in [Oliver] receiving a death sentence." We note, however, that subsection (B) requires the habeas applicant to show that "no reasonable factfinder would have found the applicant guilty of the underlying offense," not that no reasonable factfinder would have imposed the same sentence. 28 U.S.C. § 2254(e)(2)(B) (emphasis added). Oliver's failure to meet subsection (A) makes the district court's application of subsection (B) moot. As to the substance of the district court's statement that the jurors did not improperly rely on the Bible in making its decision, the court will consider this issue after further briefing and oral argument.

[7] Oliver claims that he did not call Brenneisen to testify because Brenneisen would have been hostile to his lawyer and would not have cooperated. This is mere speculation, however, and does not excuse Oliver's failure to call Brenneisen—or any of the other jurors—at the hearing.

a matter of law, did the jurors' consultation of the Bible in the jury room constitute an external influence that raises a presumption of prejudice under clearly established federal law, as determined by the Supreme Court of the United States; and (2) if so, has the state rebutted that presumption here? The clerk will issue a briefing schedule for the parties to submit supplemental briefs on these questions and will schedule oral argument in due course.

## III. CONCLUSION

We DENY Oliver's request for a COA on his three claims. We also DENY Oliver's request for a stay and abatement or for an evidentiary hearing. The clerk will issue a briefing schedule and schedule oral argument for Oliver's remaining claims.